[Civ. No. 46877. Second Dist., Div. Five. July 19, 1976.]

In re the Marriage of JANE ANN and PHILIP WEBSTER WRIGHT.
PHILIP WEBSTER WRIGHT, Appellant, v.
JANE ANN WRIGHT, Respondent.

254

**COUNSEL**

Paul Augustine, Jr., for Appellant.

Hitt & Murray, Anthony Murray and Brian C. Cuff for Respondent.

OPINION

KAUS, P. J.—Petitioner Philip Wright appeals from portions of an interlocutory judgment of dissolution of marriage. Respondent is Jane Wright.

## FACTS

The parties were married in 1957 and separated in March 1973. Jane, a housewife, was 37 years old, and Philip, a surgeon, was 39 years old when they separated. They have four children, born in 1958, 1961, 1963, and 1966.

The couple met when they were both students at Occidental College. Jane obtained a teaching credential and began to teach. They then moved to Chicago, where Philip attended medical school and Jane worked. Two children were born in Chicago. They then moved to Los Angeles where Philip interned at U.C.L.A., and then was a resident for five years at Harbor General Hospital. Jane was last employed in 1963. The third and fourth children were born in 1963 and 1966.

When Philip was drafted by the Navy, the family moved to the Philippines in 1967, where they lived for two years. They returned to California in 1969 and Philip became associated with a medical firm as a heart surgeon. Philip's partnership arrangements with the medical firm were terminated in June 1973, after the couple separated. He set up his own practice and hired a surgeon.

The litigation involved in the dissolution was protracted. Although the community property created no particular difficulties—it amounted to only $56,000, including the equity in the family home—the extent of Philip's earning was a problem. A "short cause" trial scheduled for July 1974 was continued to October 1974, when it developed that both parties had been incorrectly advised as to Philip's income. Extensive discovery followed, including taking the deposition of Philip's associate. An attempt to subpoena business records of the associate was resisted, in part successfully. The trial was not held until November 1974. It consumed several days.

The trial court found that Philip's "net income" was "in the range of $115,000" a year; that Jane needed support in the amount of $2,000 a month and that the children needed support in the amount of $200 per

month per child. It found that Jane "has a potential for employment as a teacher, but will require considerable training to reach that potential and is not now employable." It found that Jane's attorneys performed necessary legal services having a value of $20,000 and that Jane was unable to pay those fees.

The judgment ordered Philip to pay Jane $2,000 a month in spousal support for a period of 10 years "until remarriage . . . death . . . or until further order of court," and $1,500 per month thereafter on the same conditions, and $200 per month per child in child support. The court also ordered Philip to pay $20,165 to Jane's attorneys.

Philip appeals only from those portions of the judgment awarding Jane spousal support and fees to her attorneys.[1]

Facts will be added in the discussion.

## DISCUSSION

■ Philip contends that the trial court abused its discretion both in awarding excessive spousal support to Jane and in failing to set a termination date for such spousal support "in the near future."

Philip's complaint concerning the amount of spousal support awarded Jane is without merit. His net income, at the time of the dissolution, was somewhere between $100,000 and $130,000 per year, depending on whose figures one accepts. Although, as Philip points out, the trial court accepted Jane's estimated expenditures for herself and the children almost to the penny—excepting only an item for psychiatric treatment for the children—these figures were not exorbitant, having in mind the free-spending life-style to which the parties had become accustomed. Arguments that Jane could do with fewer flights to relatives in San Francisco, less recreation, or less expensive clothing are, and were, properly addressed to the trial judge. Even Philip's allegedly more "realistic" figures would reduce the total figure by only $355 a month.

■ As far as providing for an early termination of spousal support is concerned, we find no authority that such termination was required as a

---

[1]Although a notice of appeal states that Philip also appeals from orders that he pay certain medical bills and that he pay all court costs, no argument is made in his brief concerning those items and we assume he has abandoned any complaints concerning them.

matter of law. Certainly our opinion in *In re Marriage of Dennis,* 35 Cal.App.3d 279, 285 [110 Cal.Rptr. 619], where we said that retention of jurisdiction should be the norm after a lengthy marriage, gives no support to Philip's position. While *Dennis* was gently questioned in *In re Marriage of Patrino,* 36 Cal.App.3d 186, 189 [111 Cal.Rptr. 367], and in *In re Marriage of Lopez,* 38 Cal.App.3d 93, 118-119 [113 Cal.Rptr. 58], these cases merely held that there a failure to retain jurisdiction was not an abuse of discretion.

Although under former section 139 of the Civil Code lifetime support was deemed to be the norm, while subdivision (d) of section 4801 now provides that order for spousal support "shall terminate at the end of the period specified in the order and shall not be extended unless the court in its original order retains jurisdiction," we have found no case declaring it an abuse of discretion not to terminate jurisdiction.

This is not to deny that the support order under review has certain, almost inevitable, problems. Philip, who has chosen an all or nothing—preferably nothing—approach, only hints at them, arguing in his brief: "With the present excessive spousal support Respondent has absolutely no incentive nor motivation to seek employment or remarry. On the contrary, considering the propensities of human nature, she would scrupulously avoid either of these two alternatives which would eliminate her excessive income."

We certainly do not read the order under review as giving Jane carte blanche to do nothing for the rest of her life. The trial court, as noted, made a necessarily speculative finding concerning Jane's income potential and did reduce the support by $500 per month, starting at a point when the youngest child will have been an adult not quite a year and a half.[2] Whether this $500 figure represents an educated guess at the amount Jane should be earning then, assuming she makes reasonable and conscientious efforts to contribute to her own support, we do not know. Certainly the reduction is some relief for Philip, and, more importantly, some incentive to Jane to turn her potential into cash. We have no reason to believe that a future court called upon to modify the spousal support in the light of future circumstances will not take into account Jane's duty to have made an "adequate effort to find suitable

---

[2] No one can quarrel with the implied finding that until the youngest child reaches majority, Jane should not enter the job market. An additional speculative factor is the fact that all children except the youngest were, at the time of trial, very depressed or disturbed.

work, consistent with her age, ability, and health . . ." (*In re Marriage of Lopez, supra,* 38 Cal.App.3d 93, 116.)

■ Philip contends that the trial court abused its discretion in awarding Jane's attorneys $20,000 in attorneys' fees and ordering Philip to pay them. His argument is basically an argument concerning the worth of the work performed by Jane's attorneys, a matter resolved by the trial court against Philip. While asserting that the case was a simple one in which there was no issue as to child custody or the determination of community and separate property, Philip ignores what the trial court pointed out: "When this case started out it appeared that he had an income of $50,000 and they developed statistics and so forth and had to pull it all out, indicating that they had an income of far in excess of $115,000." In light of the difficulty Jane and her attorneys encountered in determining Philip's actual income and their success in establishing its size, the award of attorneys' fees was well within the trial court's discretion.

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.