[S.F. No. 23609. Jan. 16, 1978.]

In re the Marriage of DAVID EDWARD and PATRICIA ROSARIO MORRISON.
DAVID EDWARD MORRISON, Respondent, v.
PATRICIA ROSARIO MORRISON, Appellant.

**COUNSEL**

Edward S. Miller for Appellant.

Shirley C. Yawitz, Ruth Miller, Gertrude D. Chern, Suzie S. Thorn and Carol Bruch as Amici Curiae on behalf of Appellant.

Hugh T. Thomson, Hogan, Newman & Thomson, Galloway, Thomson & Kilduff and Stephen Adams for Respondent.

**OPINION**

BIRD, C. J.—Appellant, Patricia R. Morrison, appeals from an interlocutory judgment of dissolution of marriage from respondent David E. Morrison. She contends that the trial court erred (1) in terminating jurisdiction to award spousal support to her after 11 years; (2) in limiting her spousal support to $400 a month; and (3) in failing to determine her interest in the husband's nonvested pension rights under a plan operated by his current employer.

I

The parties were married in New York in 1947. At that time the husband was in military service, and the wife was also employed. However, shortly after the marriage and at her husband's insistence, the wife quit her job. Although the wife did hold a few part-time jobs in the early years of the marriage, she devoted her time principally to maintaining the home and raising two children, who are now adults.

In 1975, the husband petitioned the court for dissolution of the 28-year marriage. At that time he was 52 years old, and the wife was 54. At the dissolution hearing the wife testified, and the husband agreed, that she had no job skills or training and was then employed part time as a newspaper collator. She received $2.25 an hour for this work, with monthly earnings of approximately $100. The wife testified that she was being treated for a low blood sugar condition, that she had little energy as a result of this condition, and that she did not know whether or not she would be able to work full time. A financial declaration, which listed the wife's estimated monthly expenses at $946, was filed, and she testified

she might be able to "make it" if she received $700 or $800 a month in spousal support.

At the time of the dissolution, the husband had retired from military service and was employed in private industry as a quality control supervisor. His gross monthly salary for his work as a supervisor was $1,500, and he received $394 a month in military pension benefits. His net monthly income from these two sources was $1,456. In his financial declaration, the husband claimed monthly expenses of $1,367.

During the marriage, community property was acquired which consisted of equity in the family home, two automobiles, the cash surrender value of various insurance policies, stocks, a coin collection, household furnishings, and numerous other items of personal property. The trial court awarded $10,066.47 of the community property to the husband, and the house and other property with a value of $38,197.88 to the wife. Additionally, the husband was ordered to pay community obligations in the amount of $3,342.10. In order that the property and the obligations might be equally apportioned, the wife was required to execute a secured note in favor of the husband in the amount of $15,736.55 with interest at 7 percent per annum. The note was payable three years after the interlocutory decree or immediately if the residence were sold, refinanced, or abandoned.

The court awarded the wife a 42.5 percent interest in the husband's military pension or approximately $167 a month.[1] The wife had also listed the husband's nonvested pension rights with his present employer as property subject to disposition by the court, but the court made no mention of that pension in its order. Finally, the court ordered spousal support to the wife in the amount of $400 a month "for a period of eight years, thereafter jurisdiction shall be reserved for three years, thereafter spousal support is to terminate absolutely."

## II

 The wife contends that the trial court abused its discretion in failing to retain jurisdiction to award spousal support to her after 11 years.

---

[1]Counsel for the parties indicated to the trial court that the amount of the pension will increase as the cost of living increases. Since the wife was awarded a percentage of the pension, the dollar amount of her share will increase as the pension increases.

At the time of the interlocutory judgment in this case, Civil Code section 4801, subdivision (a),[2] provided in pertinent part: "[T]he court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable having regard for the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment without interfering with the interests of the children of the parties in the custody of such spouse."[3] (Stats. 1971, ch. 1675, § 3, p. 3602.) Subdivision (d) of that section provided: "An order for payment of an allowance for the support of one of the parties shall terminate at the end of the period specified in the order and shall not be extended unless the court in its original order retains jurisdiction." (*Id.,* at p. 3603.)

The courts of appeal are in disagreement as to the guidelines to be followed by a trial court in determining whether or not to retain jurisdiction to extend a spousal support order. In the leading case of *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885 [101 Cal.Rptr. 295], Division Two of the Fourth Appellate District reversed a judgment in which the trial court had dissolved a marriage of 17 years, had awarded spousal support to the wife for a period of three years, but had failed to retain jurisdiction to award payments thereafter. The Court of Appeal rejected the argument that "enactment of The Family Law Act constituted some sort of mandate by the Legislature to the courts to relieve husbands of any long, continuing obligation for spousal support." (*Id.,* at p. 897.) Citing the well-established rule that "orders for changes in support to take effect in the future must be based upon reasonable inferences to be drawn from the evidence, not mere hopes or speculative expectations," the court concluded that the trial court had abused its discretion in failing to retain jurisdiction, since there was no evidence in the record to indicate that the wife would be able to support herself after three years. (*Id.,* at p. 896.)

The next case to consider the issue of retention of jurisdiction to extend spousal support payments was *In re Marriage of Dennis* (1973) 35 Cal.App.3d 279 [110 Cal.Rptr. 619]. Division Five of the Second Appellate District, in reviewing a judgment which terminated jurisdic-

[2]Unless otherwise indicated, all statutory references are to the Civil Code.

[3]Section 4801, subdivision (a), has been amended since the trial court entered its interlocutory judgment in this case. The statute now lists numerous factors to be considered by a court in determining the appropriate amount and duration of spousal support. (See Stats. 1976, ch. 130, § 5, p. 247.)

tion after four years, found an abuse of discretion. The court stated: "It is possible that difficulties not contemplated at this time will frustrate even a good faith attempt by the wife to become wholly or partially self-supporting. *Rosan . . .* certainly indicates that after a lengthy marriage a retention of jurisdiction to modify spousal support should be the norm and that the burden of justification is on the party seeking termination. [¶] That burden is not met here. The court had no real assurance that at the end of the four-year period the wife will be unable to show that in spite of sincere efforts on her part, she cannot support herself adequately. It was not warranted in burning its bridges." (*Id.,* at p. 285.)

The reasoning set forth in *Rosan* and *Dennis* has been followed in a series of opinions. (See, e.g., *In re Marriage of Cosgrove* (1972) 27 Cal.App.3d 424 [103 Cal.Rptr. 733] [Second Dist., Div. Two]; *In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628 [120 Cal.Rptr. 654] [Second Dist., Div. Five]; *In re Marriage of Wright* (1976) 60 Cal.App.3d 253 [131 Cal.Rptr. 870] [Second Dist., Div. Five]; *In re Marriage of Kelley* (1976) 64 Cal.App.3d 82 [134 Cal.Rptr. 259] [Second Dist., Div. Four]; *In re Marriage of Lovitz* (1976) 65 Cal.App.3d 299 [135 Cal.Rptr. 9] [Second Dist., Div. Five]; *In re Marriage of Brantner* (1977) 67 Cal.App.3d 416 [136 Cal.Rptr. 635] [Fourth Dist., Div. Two]; *In re Marriage of Norton* (1976) 71 Cal.App.3d 537 [139 Cal.Rptr. 728] [Fifth Dist.].)

Two Court of Appeal opinions, however, criticize and reject the language of *Rosan* and *Dennis* that (1) a trial court should usually reserve jurisdiction to extend spousal support orders where the marriage has been a lengthy one, and (2) the party seeking to terminate jurisdiction in such a case has the burden of showing that the financial needs of the supported spouse will be adequately met at the date proposed for termination of jurisdiction. (*In re Marriage of Patrino* (1973) 36 Cal.App.3d 186 [111 Cal.Rptr. 367] [First Dist., Div. Two]; *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93 [113 Cal.Rptr. 58] [Third Dist.].)

In *Patrino,* the husband and wife had been married for 26 years, and the wife had not worked during the last 15 years of the marriage. Nevertheless, the appellate court affirmed an order in which the trial court had awarded a limited amount of spousal support to the wife for a period of one year and had not retained jurisdiction to award payments thereafter. In its *per curiam* opinion, the court set forth the following

rationale: "To carry such a burden too far would have the effect of destroying the purpose of the new Family Law Act to reduce the amount of courtroom litigation involved in settling the rights of the parties to a dissolution proceeding. [¶] Prior to passage of the Family Law Act, trial courts had ongoing jurisdiction to modify awards of spousal support. Now subdivision (d) of section 4801 of the Civil Code provides for absolute termination of spousal support unless the trial court in its original order retains jurisdiction to extend an order for support. The new law thus affords the trial court the discretion to determine if support should be absolutely terminated after a period of time. In this way, the court can settle the rights of the parties at one time and to some extent curtail endless modification proceedings." (*In re Marriage of Patrino, supra,* 36 Cal.App.3d at p. 189, italics omitted.)

In *Lopez,* the court concluded that the trial court had abused its discretion, both as to amount and duration, in awarding a wife of 14 years spousal support of $200 a month for a period of two years. The court, however, stated that the trial court's decision to terminate jurisdiction was not an abuse of discretion. On that point the court criticized the reasoning of *Rosan* and *Dennis* while citing *Patrino* with approval: "As noted in *Patrino, supra,* section 4801, subdivision (d), of the Civil Code now provides for the absolute termination of spousal support unless the trial court in its original order retains jurisdiction to extend an order for support. We think this evidences a legislative intent to diminish constant modification proceedings, to provide both parties some degree of post-dissolution economic stability by minimizing the inherent apprehension of the possible loss or extension of spousal support, and in proper cases to eliminate permanent burden or dependence, thus motivating both parties to seek a new life completely free from a former marital failure." (*In re Marriage of Lopez, supra,* 38 Cal.App.3d at pp. 118-119.)[4]

The guidelines set forth in the *Rosan-Dennis* line of cases prohibit a trial court from terminating jurisdiction over spousal support after a lengthy marriage unless the record contains evidence that the supported spouse will be able to adequately support himself or herself at the time selected for termination of jurisdiction. The opposite is true if *Patrino* and *Lopez* are followed, since those cases permit a trial court to terminate jurisdiction over spousal support after a lengthy marriage even though no such showing of self-sufficiency has been made. The *Patrino*

---

[4]The judge who authored the *Lopez* opinion was the trial judge in the *Patrino* proceedings.

and *Lopez* courts claim that the Legislature, in passing the Family Law Act of 1969 (Stats. 1969, ch. 1608, p. 3314, eff. Jan. 1, 1970), endorsed a policy of encouraging the termination of jurisdiction to reduce the number of future modification proceedings and to provide the parties with some degree of "post-dissolution economic stability." However, a review of the legislative history does not support the thesis that the Legislature intended to authorize trial courts to disregard the parties' circumstances and terminate jurisdiction for either of these reasons.

To support the assertion that one of the goals of the Family Law Act was to curtail the number of modification proceedings, the *Patrino* and *Lopez* decisions rely on section 4801, subdivision (d). This reliance is misplaced for several reasons. Section 4801, subdivision (d), was not, as *Patrino* and *Lopez* assert, a new provision added to the Civil Code with the adoption of the Family Law Act. That subdivision was merely a recodification of former section 139.7, which had been enacted in 1965. The legislative history of former section 139.7 indicates that the Legislature, in adopting this section, had a very different goal in mind than the curtailment of modification proceedings.

Before the enactment of former section 139.7, the appellate courts held that a trial court retained jurisdiction to modify an alimony decree at any time during the payment period and it was not necessary to so state in the court's order. The right to extend the duration of such an award and the right to terminate it were part of this power. (See, e.g., *Dahlstet* v. *Dahlstet* (1969) 272 Cal.App.2d 174, 178 [77 Cal.Rptr. 45]; *Simpson* v. *Simpson* (1955) 134 Cal.App.2d 219 [285 P.2d 313].) The court was not able to divest itself of this authority to modify even if it so desired. (*Harrold* v. *Harrold* (1950) 100 Cal.App.2d 601 [224 P.2d 66]; *Soule* v. *Soule* (1906) 4 Cal.App. 97 [87 P. 205].) Further, no relief could be granted after the specified term in the decree had passed, for the trial court's jurisdiction terminated on that date. (*Reichardt* v. *Reichardt* (1960) 186 Cal.App.2d 808, 812 [9 Cal.Rptr. 225].) However, the court could retain jurisdiction to grant relief after that date by *expressly* reserving jurisdiction in its order. (See, e.g., *Long* v. *Long* (1941) 17 Cal.2d 409, 410 [110 P.2d 383]; 2 The Cal. Family Lawyer (Cont.Ed.Bar 1963) §§ 30.137, 30.138, 30.141, pp. 1474-1476.)

The confusion, which was generated by these rules concerning the retention of jurisdiction, led to some unfortunate results for both spouses. Since the trial court was not required to take any affirmative

steps to retain jurisdiction during the alimony period, the supporting spouse was not necessarily given any express notice of the court's continuing jurisdiction to extend the period. For example, if an order provided for alimony for 10 years but did not make any reference to jurisdiction, the supported spouse could petition the court for additional years of alimony any time within 10 years. This could not be discerned by reading the court's order, so often the supporting spouse concluded that his or her obligation to provide alimony would terminate at the end of 10 years.

These rules benefited the supported spouse by providing for automatic retention of jurisdiction during the payment period. However, confusion as to how long the court retained that jurisdiction led some supported spouses to erroneously wait until the previously provided alimony had ended before petitioning for an extension. (See, e.g., *Long* v. *Long, supra,* 17 Cal.2d 409.) Even though the request may have come only one day after alimony ended, the court was without jurisdiction to provide relief despite the fact the supported spouse's need may have been great.

To eliminate these prevalent misunderstandings of the parties concerning the trial court's retention of jurisdiction, the Legislature changed the decisional law by enacting former section 139.7.[5] The trial court was required to expressly indicate in its order if it wished to retain jurisdiction. The supporting spouse was put on notice by the court's order that it had the power to extend the alimony payments. It is true that the supported spouse no longer received the benefit of the court's automatic retention of jurisdiction during the period for which alimony had been awarded. However, under the new statute, when the court did retain jurisdiction for an indefinite period of time, the supported spouse would no longer be precluded from petitioning for additional relief after the previously provided alimony had terminated. If the court retained

---

[5]In 1965, the Assembly Interim Committee on Judiciary released its final report on domestic relations. (See 23 Assem. Interim Com. Rep. (1963-1965) No. 6, Final Report of the Assembly Interim Committee on Judiciary, Relating to Domestic Relations (Jan. 11, 1965) 2 Appendix to Assem. J. (1965 Reg. Sess., First and Second Ex. Sess.).) As a result of that study, several bills were introduced in the 1965 legislative session; one of these, Assembly Bill No. 226, which was authored by Assemblyman George A. Willson, Chairperson of the Assembly Judiciary Committee, created former section 139.7. That section provided: "An order for payment of an allowance for the support of one of the parties pursuant to Section 139 shall terminate at the end of the period specified in the order and shall not be extended unless the court in its original order retains jurisdiction." (Stats. 1965, ch. 1109, § 1, p. 2755.)

jurisdiction for only a limited period of time, that time period was expressly set forth in the order, so the supported spouse knew the time within which he or she had to petition for additional relief.

In short, the new statute clarified for both parties whether, and for what period of time, a court retained jurisdiction to extend an alimony order. It was to provide this clarification, not to curtail modification proceedings as *Patrino* and *Lopez* assert, that the Legislature enacted former section 139.7.[6]

---

[6]An Assembly Judiciary Committee synopsis on family law legislation contains the following statement regarding Assembly Bill No. 226:

"In order to eliminate the hardship and litigation which has been occasioned by misunderstandings and misinterpretations of orders for alimony which specify payment of a certain amount for a certain length of time, AB-226 . . . provides that alimony will terminate as provided in the order unless express provision is made to retain jurisdiction for extensions. This eliminates the haphazard situation which previously existed whereby such orders could be extended if application were made the day before the terminal date specified but relief was denied for lack of jurisdiction if application were made the day after that specified in the order." (See Assem. Jud. Com., Resume of Enacted and Proposed Legislation Relating to Marriage and Family Living in California (1965 Gen. Sess.) p. 6.)

This quoted statement supports the conclusion that former section 139.7 was enacted to help eliminate the frustrations, and subsequent litigation, which arose when a supporting spouse belatedly learned to his or her dismay that while a support order indicated on its face that support payments were to be paid only to a specified date, those payments could be extended indefinitely if an application for extension were filed even one day before that date. As noted, former section 139.7 helped eliminate these mistaken expectations of the supporting spouse by providing that the trial court had to expressly indicate in its order its intention to retain jurisdiction to make future extension orders. The supporting spouse was thus made aware of the possibility of such future orders. Additionally, the quoted statement indicates that the Legislature was disturbed that due to the confusion produced by the old rules concerning jurisdiction, supported spouses were filing their petitions for additional relief too late and were for that reason being denied relief to which they were otherwise entitled.

The letter of transmittal for Assembly Bill No. 226 from Assemblyman Willson to Governor Edmund G. Brown, Sr., further supports the conclusion that the Legislature enacted former section 139.7 in order to eliminate prevalent misunderstandings of the parties concerning a trial court's retention of jurisdiction. That letter provides: "AB-226 states that alimony payments shall terminate at the end of the period as provided in the Order. The bill was introduced to avoid some confusion that presently exists regarding such an Order for the payment of alimony. There has been some misunderstanding as to whether or not a wife may come into court prior to the expiration of the period specified in the Order and seek an increase in alimony for a longer period of time than was originally indicated. [¶] This bill would carry out the original understanding of the parties and would enforce the original intention of the court in rendering the support Order. [¶] However, this bill would permit the court to retain jurisdiction over the case in order to modify the support order or to extend the period by so specifying in the original order. [¶] I know of no opposition to the bill, and therefore, request its enactment." (Letter of June 21, 1965, from Assemblyman George A. Willson to Governor Edmund G. Brown, Sr.)

Clearly, the Legislature expected this clarification would provide the collateral benefit of eliminating litigation spawned by the previous misunderstandings of the parties. (See fn. 6, *ante.*) Also, when the court elected not to retain jurisdiction in *appropriate* cases (which it could not do under the old procedures during the period for which alimony had been awarded), the number of future modification hearings would be reduced. Nothing in the legislative history of this section lends credence to the contention that this statute was enacted to encourage or direct the trial courts to terminate jurisdiction to reduce the number of subsequent modification hearings. Further, there is certainly nothing to indicate a policy favoring such termination when there is no evidence that the supported spouse will be self-supporting at the time jurisdiction is to terminate. On the contrary, the legislative history of former section 139.7 indicates the Legislature was disturbed that supported spouses were petitioning too late and were for that reason being denied relief to which they were entitled. (See fn. 6, *ante.*) Clearly, the Legislature expected that under the new provision the courts would retain jurisdiction in such cases, even though additional hearings might be required.

There is nothing in the language of former section 139.7 itself to support the assertion in *Patrino* and *Lopez* that a trial court is authorized to terminate jurisdiction in order to curtail the number of future modification proceedings. That section merely set forth the changed procedures a court was to follow in order to retain jurisdiction. It did not specify the factors a court was to consider in determining whether to retain jurisdiction. The Legislature had already provided the trial courts with standards to guide them in making that decision. Former section 139, which had been enacted prior to former section 139.7, set forth the factors a court was to consider in determining both the amount *and the duration* of alimony. That section provided: "[T]he court may compel the party against whom the decree or judgment is granted to make such suitable allowance for support and maintenance of the other party for his or her life, or for such shorter period as the court may deem just, having regard for the circumstances of the respective parties . . . ." When the Legislature enacted former section 139.7, it did not change former section 139. The *procedures* governing retention of jurisdiction were changed but the requirement, that a court be guided by the circumstances of the parties in determining the duration of alimony, was not altered. Thus, it appears that the Legislature intended a court to be guided by those circumstances not only in setting the amount and duration of alimony, but also in deciding whether or not to retain jurisdiction.

The enactment of the Family Law Act in 1969 did nothing to change this requirement that a court be guided by the circumstances of the parties in resolving issues relating to spousal support.[7] As noted, former section 139.7 was recodified as section 4801, subdivision (d),[8] with the adoption of that act. (Stats. 1969, ch. 1608, § 8, p. 3334.) Former section 139 was repealed, and a new section, section 4801, subdivision (a), set forth the factors to be considered by a court in setting the amount and duration of spousal support. (*Id.*, at pp. 3333-3334.) The major differences between former section 139 and the new section were that the new section eliminated consideration of the comparative marital fault of the parties in setting support, and listed two specific factors to be considered by the court in setting support—the duration of the marriage and the ability of the supported spouse to engage in gainful employment.[9] (See *In re Marriage of Rosan, supra,* 24 Cal.App.3d at p. 892; *In re Marriage of Cosgrove, supra,* 27 Cal.App.3d at p. 434.) While the new section eliminated the consideration of one factor and required the consideration of two others, the trial court was, as with the old statutory scheme, to be guided by the "circumstances of the respective parties" in determining the amount and duration of spousal support. (Stats. 1969, ch. 1608, § 8, p. 3333.)

Undoubtedly the Legislature expected, as it had with the enactment of former section 139.7, that the changes made by the Family Law Act would reduce litigation. For example, by eliminating "fault" as a consideration in dissolution proceedings, the Legislature sought to reduce the "hate, scorn, bitterness and acrimony" which divorce proceedings had promoted. (See Assem. Com. Rep. on Assem. Bill No. 530 and Sen. Bill No. 252 (The Family Law Act), Com. on Judiciary, 4 Assem. J. (1969 Reg. Sess.) pp. 8053, 8057.) Certainly the Legislature hoped that diffusing these intense emotions would in turn reduce the

---

[7]The Family Law Act does not use the term "alimony." "This word evoked an almost automatic glandular reaction, and the resulting accumulations of bile did nothing to ease the unhappy lot of counsel and court." (Attorney's Guide to Family Law Act Practice (Cont.Ed.Bar 1970) § 3.1, p. 138.)

[8]Former section 139.7 was originally recodified as former section 4801, subdivision (e). (See Stats. 1969, ch. 1608, § 8, p. 3334.) In 1971, former section 4801, subdivision (e), was renumbered section 4801, subdivision (d). (See Stats. 1971, ch. 1675, § 3, p. 3603.) For clarity, "section 4801, subdivision (d)" is used at all times herein when referring to the recodified former section 139.7.

[9]These two factors, as well as others, had long been considered by the courts in making support awards. (See 2 The Cal. Family Lawyer, *supra,* § 28.23, pp. 1333-1336; Attorney's Guide to Family Law Act Practice, *supra,* § 3.3, p. 139.) However, it may be inferred that by specifically listing these two, the Legislature intended that courts give them special consideration in determining the amount and the duration of support.

amount of litigation they had previously generated. Contrary to the assertion in *Patrino* and *Lopez,* neither the language nor the legislative history of section 4801, subdivision (d), or any other provision of the Family Law Act, evidences a policy favoring termination of jurisdiction over spousal support for the sole purpose of curtailing the number of future modification hearings.[10]

There are strong policy reasons why the *Patrino-Lopez* rule concerning termination of jurisdiction should not be approved. Although such a rule might reduce the amount of litigation, a desirable goal, that goal should not be achieved by permanently excluding from the courtroom spouses who are in need of financial support. As the court stated in *Brantner,* "[W]e quite agree that any procedure which reduces the amount of courtroom litigation is thoroughly commendable—in the abstract. However, this concept, too, has its limitations. While the speedy disposition of cases is desirable, speed is not always compatible with justice. Actually, in its use of courtroom time the present judicial process seems to have its priorities confused. Domestic relations litigation, one of the most important and sensitive tasks a judge faces, too often is given the low-man-on-the-totem-pole treatment, quite often being fobbed off on a commissioner. . . . [W]e begrudge the judicial resources necessary for careful and reasoned judgments in this most delicate field—the breakup of a marriage with its resulting trauma and troublesome fiscal aftermath. The courts should not begrudge the time necessary to carefully go over the wreckage of a marriage in order to effect substantial justice to all parties involved." (*In re Marriage of Brantner, supra,* 67 Cal.App.3d at p. 422.)

---

[10]In 1966, Governor Edmund G. Brown, Sr., established the Governor's Commission on the Family to examine California's family laws. The report which the Commission released was "significant in the evolution of the new Family Law Act." (Assem. Com. Rep., *supra,* 4 Assem. J. (1969 Reg. Sess.) at p. 8054.) Far from endorsing procedures which would direct courts to "spew out" domestic relations matters in order to save courtroom time, that report stated: "The Commission is convinced that if we are to begin to cope with this burgeoning problem [of divorce], our legal processes must be such as to permit a thorough examination into the real difficulties of the families before the Court. If the goal of the law is—as we believe it must be—to further the stability of the family, then the process of dissolving a marriage must be carried out in such a setting and in such a manner that the Court can fully inquire into the problems before it, and can bring to bear professional resources to ameliorate them. In short, the law cannot operate blindly; it must be able to act with an eye to the whole family situation, not just that of two parties. It must be able to take account of the total impact of the marital breakdown: upon the spouses, upon their children, and upon society as a whole." (Report of the Governor's Commission on the Family (Dec. 1966) pp. 5-6.) The report of the Assembly Interim Committee on Judiciary concerning marriage and divorce problems likewise expressed concern about the manner in which family law matters were "shuffled" within the courts. (23 Assem. Interim Com. Rep. (1963-1965) No. 6, *supra,* at pp. 83-84.)

Next, it is asserted in *Patrino* and *Lopez* that the Family Law Act (and in particular section 4801, subdivision (d)) evidences a legislative policy favoring judgments which terminate jurisdiction over spousal support in order that both parties can develop "some degree of post-dissolution economic stability." (*In re Marriage of Lopez, supra,* 38 Cal.App.3d at p. 119.)

As noted *ante,* former section 4801, subdivision (a), which was enacted as part of the Family Law Act, did expressly direct that in determining the amount and duration of spousal support, a court was to consider the supported spouse's ability to engage in gainful employment. It certainly may be inferred that by specifically setting forth this factor, the Legislature intended that all supported spouses who were able to do so should seek employment. It also appears the Legislature expected that courts would issue orders encouraging these spouses to seek employment and to work toward becoming self-supporting. (See *In re Marriage of Rosan, supra,* 24 Cal.App.3d at p. 896; see also fn. 9, *ante.*) However, as with their argument on the curtailment of modification proceedings, the courts in *Patrino* and *Lopez* misconstrue the intent of the Legislature. They conclude that to promote such self-sufficiency, a court may set a termination date for spousal support without retaining jurisdiction to extend that date, even though the record does not indicate that the supported spouse will be financially independent at that time. This conclusion finds no support in the legislative history of section 4801, subdivision (d), or any other provision of the Family Law Act.

In 1969, the Assembly Committee on the Judiciary issued a report setting forth its intent in approving the Family Law Act. On the issue of support, that report states: "In awarding alimony or modifying a previous award, the court is directed to consider the duration of the marriage and the ability of the supported spouse to engage in gainful employment with due regard to the interests of any children of the parties. [¶] When our divorce law was originally drawn, woman's role in society was almost totally that of mother and homemaker. She could not even vote. Today, increasing numbers of married women are employed, even in the professions. In addition, they have long been accorded full civil rights. Their approaching equality with the male should be reflected in the law governing marriage dissolution and in the decisions of courts with respect to matters incident to dissolution." (Assem. Com. Rep., *supra,* 4 Assem. J. (1969 Reg. Sess.) at p. 8062.)

This report indicates that in those cases in which the supported spouse is working, the amount and duration of support, if any, should reflect this fact. The report also sets forth the Legislature's intent that courts should encourage supported spouses to seek employment. However, the report does not in any way suggest that when the supported spouse is unemployed or is earning only a small salary, a court should set a jurisdictional termination date based on the mere hope that this will induce that spouse to become self-supporting. Nor does it suggest that a court is justified in setting a jurisdictional termination date simply to relieve the supporting spouse of a long-term obligation. In short, while a court is to consider a supported spouse's employment in setting the amount and duration of support and is to encourage a supported spouse to seek employment, there is nothing in this report (or any other legislative history) to indicate that the Family Law Act was intended to be "some sort of mandate by the Legislature to the courts to relieve [the supporting spouse in every case] of any long, continuing obligation for spousal support." (*In re Marriage of Rosan, supra,* 24 Cal.App.3d at p. 897.)

Limiting the duration of support so that both parties can develop their own lives, free from obligations to each other, is a commendable goal. However, if courts were to award support with a set termination date simply for this reason and without any evidence as to the ability of the supported spouse to support himself or herself, great injustices could result. Although increasing numbers of married women today are employed, many others have devoted their time, with their spouse's approval, to maintaining the home and raising the children, leaving them no time for employment outside the home. This willingness of the wife to remain at home limits her ability to develop a career of her own. If the marriage is later dissolved, the wife may be unable, despite her greatest efforts, to enter the job market. As the Legislature has recognized, "displaced homemakers . . . are subject to the highest unemployment rate of any sector of the work force; they face continuing discrimination in employment because they are older and have no recent paid work experience . . . ." (Gov. Code, § 7300.) If a court has encouraged the wife's self-sufficiency by ordering a limited period of support without retaining jurisdiction, it cannot provide additional support despite her continuing need and her efforts to become financially independent.

Based on this review of the legislative history of former section 139.7 and the Family Law Act, this court agrees with the reasoning in *Rosan*

and *Dennis* concerning the retention of jurisdiction. A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. In making its decision concerning the retention of jurisdiction, the court must rely only on the evidence in the record and the reasonable inferences to be drawn therefrom. It must not engage in speculation. If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not "burn its bridges" and fail to retain jurisdiction. (*In re Marriage of Dennis, supra,* 35 Cal.App.3d at p. 285.) To the extent that the *Patrino* and *Lopez* decisions contain language contrary to the views expressed in this opinion, they are disapproved.

These standards will not require a trial court to retain jurisdiction in every case involving a lengthy marriage. In some instances the record will indicate that both spouses are employed, an increasingly prevalent situation today, or that there are sufficient assets available to enable each to provide for his or her needs. In that event, no support or support for only a limited time, without a retention of jurisdiction, would be appropriate. (Civ. Code, §§ 4801, subd. (a), 4806.) Where jurisdiction has been retained in the original order, future modification hearings may well reveal that the supported spouse has found adequate employment, has delayed seeking employment, or has refused available employment. At that time, the court may appropriately consider such factors in deciding whether or not to modify its original order. (See, e.g., *In re Marriage of Rosan, supra,* 24 Cal.App.3d at p. 896; *In re Marriage of Lopez, supra,* 38 Cal.App.3d at p. 116.)

In some cases the supported spouse may never be able to adequately provide for his or her needs. A wife who has spent her married years as a homemaker and mother may, despite her best efforts, find it impossible to reenter the job market. In such a case "the husband simply has to face up to the fact that his support responsibilities are going to be of extended duration—perhaps for life. This has nothing to do with feminism, sexism, male chauvinism . . . . It is ordinary common-sense, basic decency and simple justice." (*In re Marriage of Brantner, supra,* 67 Cal.App.3d at p. 420.) The same will, of course, be expected of a wife in those cases in which a husband has devoted his time to maintaining the home and raising the children while the wife has pursued a career outside the home.

In the present case, no showing was made that the wife would be self-supporting at the end of 11 years. All the evidence in the record is to the contrary. The wife has no significant job skills or work history and has been able to secure only relatively low paying part-time employment. Further, the record indicates the wife's ability to obtain full-time employment may be hampered by medical problems. At the time the court's jurisdiction terminates in 11 years, the wife will have reached the customary retirement age of 65. The record does not indicate what, if any, retirement benefits she will be eligible to receive at that time.

The trial court abused its discretion by divesting itself of jurisdiction to award future spousal support after 11 years without any evidence in the record that the wife would be able to provide for herself at that time. Accordingly, the portion of the judgment which fails to retain jurisdiction after 11 years must be reversed.

## III

Next, the wife contends that the trial court abused its discretion in limiting her spousal support to $400 a month.

Although not unlimited, a trial court's discretion is broad in setting the amount of spousal support to be awarded upon dissolution of marriage.[11] (See, e.g., *Nunes* v. *Nunes* (1964) 62 Cal.2d 33, 38 [41 Cal.Rptr. 5, 396 P.2d 37]; *Hall* v. *Hall* (1954) 42 Cal.2d 435, 442 [267 P.2d 249]; *Webber* v. *Webber* (1948) 33 Cal.2d 153, 161 [199 P.2d 934].) At the time of the interlocutory judgment in this case, trial courts were authorized by statute to award spousal support to either party in such amount as these courts deemed "just and reasonable having regard for the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment . . . ." (Stats. 1971, ch. 1675, § 3, p. 3602.)

In construing a predecessor statute (former Civ. Code, § 139), this court stated that the term, "circumstances," "includes 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' (*Lamborn* v.

---

[11]An order setting the amount of spousal support is of a different nature than one which terminates jurisdiction over support. (See, e.g., *In re Marriage of Kelley, supra,* 64 Cal.App.3d at p. 95.) In the latter case, a court by terminating jurisdiction loses forever its power to extend support payments, no matter what circumstances subsequently develop. A court's decision concerning the amount of support can, however, be modified at any time during the support payment period. (Civ. Code, § 4801, subd. (a).)

*Lamborn,* 80 Cal.App. 494, 499 [251 P. 943].) '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.' (*Becker* v. *Becker,* 64 Cal.App.2d 239, 242 [148 P.2d 381].)" (*Hall* v. *Hall, supra,* 42 Cal.2d at p. 442.)

██ The financial information contained in the record of this case indicates that the wife's monthly income will be approximately $667 under the challenged order—$400 from spousal support, $167 from her share of the military pension benefits, and $100 from her part-time employment. This amount is less than the wife's claimed expenses, but under the terms of the interlocutory decree, the husband's income is also less than his anticipated expenses. Although the husband's claimed monthly expenses are $1,367, his net monthly income will be reduced to approximately $900 due to the division of his military pension benefits and to the spousal support payments.

The husband's and wife's incomes, which were sufficient to cover their expenses when they were living together, are not sufficient to sustain the expenses of two separate households. Under these circumstances, the trial court was unable to provide fully for the financial needs of both parties. In attempting to fairly allocate the funds that were available, the court did not abuse its discretion in setting the wife's spousal support at $400 a month.

## IV

██ Finally, the wife contends that the trial court erred in failing to adjudicate her interest in the nonvested pension rights of the husband. This contention has merit.

The trial court's omission is understandable. Until this court's supervening decision in *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561], nonvested pension rights were regarded as a mere expectancy, and hence not a property interest subject to division upon a dissolution of marriage. In *Brown,* this court concluded that nonvested pension rights do constitute a community asset subject to division. That decision was to be applied retroactively to any case in which the adjudication of property rights was still subject to appellate review. (*Id.,* at p. 851.) Since this case falls within that category, the trial court must award the wife her interest in the nonvested pension.

Relying on *In re Marriage of Tammen* (1976) 63 Cal.App.3d 927, 931 [134 Cal.Rptr. 161], the husband contends that the community property of the parties was not equally divided, since the market value of the promissory note he received from the wife was less than its face value. Upon remand the trial court should consider the merits of this argument.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

Tobriner, J., Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.

**RICHARDSON, J.**—I concur in the judgment. I respectfully note, however, that the holding in *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93 [113 Cal.Rptr. 58], in which I concurred, neither favors "termination of jurisdiction over spousal support for the sole purpose of curtailing the number of future modification hearings" (*ante,* p. 450) nor promotes spousal self-sufficiency without regard to the realistic financial capabilities of the parties. On the contrary, the *Lopez* court determined that, given the facts of that case, the trial court had abused its discretion as to the amount and duration of spousal support ordered and accordingly reversed a judgment as to that award. In my view, the holding in *Lopez* does not contain language inconsistent with the broad policy expressions set forth herein and disapproval of *Lopez* is not, therefore, required.

Respondent's petition for a rehearing was denied February 15, 1978, and the opinion was modified to read as printed above.