[No. B020877. Second Dist., Div. Five. Jan. 14, 1988.]

In re the Marriage of DORIS MILDRED and CHARLES BRYSON McELWEE.
DORIS MILDRED McELWEE, Appellant, v.
CHARLES BRYSON McELWEE, Respondent.

COUNSEL

Dennis A. Fischer for Appellant.

Lance S. Spiegel for Respondent.

OPINION

FEINERMAN, P. J.—This is an appeal from a judgment terminating spousal support without a reservation of jurisdiction. Appellant, Doris Mildred McElwee, also contends that the trial court abused its discretion in fixing spousal support in the amount of $500 a month for the period commencing April 1983 and ending October 1986. We affirm.

## Background

Appellant and respondent, Charles Bryson McElwee, separated in 1974 after a 15-year marriage. Respondent made temporary spousal and child support payments. The marriage was dissolved by court order in 1977. Issues of support and property division, which had been bifurcated, were adjudicated in a January 18, 1978, order which awarded appellant $2,500 a month spousal support for three years commencing July 15, 1977.[1] The court retained jurisdiction on the issue of spousal support until April 5, 1983. On November 21, 1980, the court issued a modification order which awarded appellant spousal support in the amount of $1,800 a month for the period August 15, 1980 to April 5, 1983. This order did not mention retention of jurisdiction.

As her distributive share of the community assets, appellant initially received property valued at $138,706.60. This property included the family home. In addition, she received cash payments totaling $60,000 to equalize her share of the community estate. In 1982, appellant received $296,000 in cash as her share of the proceeds from the sale of a company known as Mensics, another community asset.

In March 1983, appellant petitioned the court for an increase in spousal support to $3,000 a month to be paid for an indefinite period of time. Following a hearing on the merits in March 1986,[2] the court issued a statement of decision which included the following findings:

Appellant holds a bachelor's and master's degree and has been licensed by the State of California as a marriage and family counselor since 1970. She has worked continuously as a counselor since the early 1970's. At the time the original support order was made in 1978, neither the court nor appellant expected that appellant would become self-supporting exclusively from her income as a counselor. It was the intention of the court to allow appellant a reasonable period of time to arrange the management of her finances so that the income from appellant's share of the community assets, together with the income from appellant's professional employment, would make her reasonably self-sufficient.

---

[1] Appellant was also awarded child support of $1,000 a month for each of the couple's two minor children until the children reached 18. The youngest child reached 18 on April 5, 1983.

[2] The trial court initially denied the petition in the belief that the 1978 order had irrevocably terminated its jurisdiction effective April 5, 1983. This court, in an unpublished opinion, reversed the order denying the petition for modification based upon the decision in *In re Marriage of Vomacka* (1984) 36 Cal.3d 459 [204 Cal.Rptr. 568, 683 P.2d 248]. (*In re Marriage of McElwee* (June 18, 1985) B001614.)

The court further found that rather than "taking advantage of the opportunity to put her financial house in order," appellant had made a series of imprudent, high risk investments from her share of the community property, which included investments in a restaurant, gold mines, cattle, and oil and gas exploration, from which she received "de minimis" income. The court concluded that appellant had "failed to exercise reasonable diligence in connection with the investments . . . that if [Appellant] had exercised reasonable diligence in connection with the investment of her share of the community property . . . [she] would have had available for her at least $2,500.00 per month in tax free income," and that "the original expectations of the court would have been realized." The court also found that appellant had made a conscious decision not to retrain or reeducate herself in order to obtain more profitable employment.

The court noted that appellant had received no spousal support for the period from April 1983 to the time of trial in March 1986. The couple's two children had moved into college housing in September 1983 and thereafter respondent had paid their expenses without contribution from appellant. As of March 1983, appellant had a cash balance in her bank account of $176,000 which had been reduced to $112,160 as of December 1985. During this period, appellant had spent in excess of $20,000 on attorney's fees, in excess of $20,000 on income and property taxes, and $26,000 on her IRA and other investments, all of which expenditures the court concluded were extraordinary. Appellant had not borrowed from any source during this period. The court found that "but for these extraordinary expenditures and but for [Appellant's] failure to exercise reasonable diligence in the care and management of her estate, [Appellant] would have been self-supporting during the period in question." The court determined that nonetheless, it would have been reasonable for appellant to have received spousal support in the amount of $500 per month for the period commencing April 1983, and that such support should continue until October 1986.

In concluding that support should terminate effective October 1986, the court relied on the following factors: Appellant's separate property estate included equity in her home of $200,000,[3] and the reasonably prudent investment of such equity would produce a return in excess of expenses for alternative housing; appellant's "sixteen years in the employment market and her separate estate justify the conclusion that she is self-sufficient;" and further that: "[Appellant] has continuously worked as a marriage and family counselor for approximately 16 years; [¶] (b) As a result of the court's order retroactively modifying spousal support, [Appellant] will have received spousal support from Respondent from the time of separation in

---

[3] The property had appreciated to a value of $250,000 by the time of trial.

1974 until October, 1986, approximately twelve years for a marriage that lasted fifteen years; [¶] (c) There are no minor children in [Appellant's] custody. As a result, she may engage in gainful employment without interfering with the interest of such children; [¶] (d) [Appellant] is physically able to continue her professional activities; [¶] (e) It would be unjust and inequitable for the Respondent to continue to support [Appellant] in light of the imprudent and negligent actions as described above. In that regard, the court does not believe that spousal support is intended to create a situation where former spouses become investment underwriters. [¶] To the extent there is any question as to [Appellant's] self-sufficiency, it is because of her failure to exercise reasonable diligence during the past twelve years. Under such circumstances, it would be unjust and inequitable to extend support." In connection with the latter conclusion, the court found that appellant's "apparent belief that . . . support would last forever facilitated [her] imprudent use of her separate property estate," and that "termination of spousal support in October, 1986 [would] facilitate [Appellant's] self-sufficiency by compelling her to efficaciously invest the balance of her separate property estate."

In addition to the award of $500 a month spousal support from April 1983 to October 1986, the court awarded appellant a total of $20,232 in attorney's fees. The judgment did not reserve future jurisdiction over spousal support.

## CONTENTIONS ON APPEAL

■ Appellant first contends that "the trial court impermissibly 'burned its bridges' when it ordered an early termination of jurisdiction over spousal support without the benefit of specific facts to establish appellant's future ability to provide for her own support." Appellant relies on *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41], which held: "A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. In making its decision concerning the retention of jurisdiction, the court must rely only on the evidence in the record and the reasonable inferences to be drawn therefrom. It must not engage in speculation. If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not 'burn its bridges' and fail to retain jurisdiction. (*In re Marriage of Dennis* [(1973)] 35 Cal.App.3d [279] at p. 285 [110 Cal.Rptr. 619].)"

The Supreme Court went on to say, however, "[t]hese standards will not require a trial court to retain jurisdiction in every case involving a lengthy marriage. In some instances the record will indicate that both spouses are employed . . . or that there are sufficient assets available to enable each to provide for his or her needs. In that event, no support or support for only a limited time, without a retention of jurisdiction, would be appropriate. (Civ. Code, §§ 4801, subd. (a), 4806.) Where jurisdiction has been retained in the original order, future modification hearings may well reveal that the supported spouse has found adequate employment, has delayed seeking employment, or has refused available employment. At that time, the court may appropriately consider such factors in deciding whether or not to modify its original order. [Citations.]" (*In re Marriage of Morrison, supra,* 20 Cal.3d 437, 453.)

The instant case, of course, differs procedurally from *Morrison, supra,* in that it does involve a modification order, whereas *Morrison* involved the initial support order. It also differs significantly from *Morrison* factually. In *Morrison,* the wife was 54 at the time of dissolution of the couple's 28-year marriage, had no job skills or training, was employed part-time as a newspaper collator for $2.25 an hour, with monthly earnings of only $100, had a medical problem which cast doubt on her ability to hold full-time employment, received property worth only $38,197 as her distributive share of the community estate, and was awarded only $400 a month spousal support for a period of eight years. It was in this factual context that the Supreme Court held that the trial court abused its discretion in reserving jurisdiction for a period of 11 years absent any evidence that the wife would be self-supporting at the end of 11 years.

The factual differences between Mrs. Morrison and appellant are striking. Although appellant was 55 years old at the time of the 1986 hearing, she had a graduate degree and professional training and she had been employed continuously in a professional capacity for 16 years. Appellant had certain health problems, but she testified that they did not incapacitate her and that she would gladly increase the number of hours she worked if she could attract additional clients. In the case at bench, appellant was awarded community assets worth nearly half a million dollars which, if invested prudently, would have sufficiently supplemented her earnings from her professional employment to have rendered her fully self-sufficient. Appellant was awarded 12 years of spousal support for a 15-year marriage, while Mrs. Morrison received only 8 years of spousal support for a 28-year marriage.

The procedural distinction between the instant case and *Morrison, supra,* 20 Cal.3d 437, is also significant. The original support order in the present case reserved jurisdiction only until April 1983. The 1980 modification order did not alter that termination date. Neither of those orders was challenged, thus the court's original decision, terminating jurisdiction as of April 1983, must be deemed justified, and indeed the facts support that conclusion. Modification of that ruling was appropriate only if there was "a material change of circumstances subsequent to the last prior order." (*In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 655 [235 Cal.Rptr. 587].)[4]

There were, in fact, three material changes in appellant's financial circumstances after the court made its original order delimiting jurisdiction. First, the children reached majority and left the family home, relieving appellant of any financial obligation towards them. Second, the family residence appreciated to approximately double its value at the time it was awarded to appellant. Third, appellant converted a significant portion of her liquid assets into nonliquid investments of unknown value with limited income potential. Thus, the first two changes in circumstances improved appellant's financial situation. To the extent that the third change impaired appellant's financial status,[5] the court found, on the basis of contested facts, that the impairment was caused by appellant's imprudent and negligent investment practices. Moreover, the court, in effect, reimbursed appellant for nearly two-thirds of the extraordinary expenses appellant incurred between April 1983 and March 1986 by its award of spousal support until October 1986 and by its award of attorneys' fees, thereby replenishing a substantial portion of appellant's liquid assets. On balance, the positive changes in appellant's financial situation sufficiently offset the negative changes so that the court did not abuse its discretion in concluding that she was essentially self-sufficient and that retention of jurisdiction beyond October 1986 was unwarranted.

Furthermore, just as lack of diligence in seeking employment may lead to a refusal to award spousal support (*In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742, 749 [189 Cal.Rptr. 622]), so too may

[4]*In re Marriage of Prietsch & Calhoun, supra,* 190 Cal.App.3d 645, 655, required a showing of changed circumstances to alter a spousal support award, but logic and sound judicial procedures compel the application of the same rule to the alteration of an order which had set a date for termination of jurisdiction.

[5]The extent to which her situation was impaired is unclear, since appellant's financial expert testified that the investments were justified because in addition to realizing tax savings, she retained the investments as assets, and she herself testified that certain of the investments were structured to start producing income after five to seven years.

improvident management of assets, which were sufficient to provide self-sufficiency in the accustomed lifestyle, justify termination of support and jurisdiction even though such an order may result in an alteration in the supported spouse's lifestyle. To hold otherwise, would encourage profligacy and discourage sound investment and prudent management to the detriment of all concerned.

■ Appellant contends, however, that her investments were not improvident, that they were made for the purpose of achieving tax savings and that, in fact, the tax savings which she realized were greater than the amount of the investments themselves. Both parties called expert witnesses who testified as to the nature, wisdom and consequences of appellant's investments. Appellant's expert was also her principal financial advisor. His advice had been predicated on the assumption that the proceeds from the sale of Mensics would be taxed as ordinary income and that her tax liability would have been $190,000 had she not found a tax sheltered investment. In fact, the lion's share of the proceeds of the Mensics sale were taxable as capital gains. Respondent cannot be held accountable for the poor tax advice appellant received.

Respondent's expert testified that appellant's tax liability from that sale would have been only $84,000, and that if appellant had paid the taxes and invested the balance in tax free municipal bonds in 1982 she could have realized $2,500 a month in tax-free income, a conclusion adopted by the trial court. Respondent's expert concluded that the investments which appellant actually made were high risk and unsuited to her situation. Resolving the factual conflict in favor of the judgment, as we must do (*Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 507 [156 Cal.Rptr. 41, 595 P.2d 619]), we find that there was sufficient evidence to support the court's conclusion as to the imprudence of appellant's investment practices.

Appellant also argues that there is inadequate evidence to sustain the court's finding as to the availability of the $200,000 equity in her home for her support. She bases this argument on her assertion that she needs a residence with a minimum of three bedrooms so that her adult children can reside with her when they are on school vacations. She contends that the least expensive alternative housing she could obtain would be a three bedroom condominium for $150,000, with monthly payments of over $1,300, compared with the $354 mortgage payment on her present residence.

Appellant's children are now 22 and 24 years old respectively. Although respondent is paying their college expenses, he is under no current legal

obligation to support them. Since he could not be ordered to make direct child support payments to appellant, he cannot be ordered to do so indirectly by requiring him to make support payments to appellant sufficient to enable her to provide a residence for the adult children who would use it only intermittently. We conclude that the trial court's finding as to the availability of the equity in appellant's residence is supported by the evidence.

■ Appellant next contends that the court's award of only $500 a month spousal support, for the period from April 1983 to October 1986, bore no reasonable relation to her needs and was therefore an abuse of discretion. A 1985 declaration of income and expenses, filed in support of appellant's 1983 petition for spousal support, listed annual gross salary and wages of $14,939, income from dividends and interest of $8,646, income from an investment partnership of $3,203 and other income of $1,383 from an undisclosed source, for a total annual income of $28,171. Her net monthly disposable income is shown as $1,891. She listed cash on hand of $101,790. She listed monthly expenses of $6,498, but these included a number of items which seem excessive absent some explanation. For example, she listed $497 a month for maintenance on her residence *in addition* to her mortgage, tax, insurance, utility and gardening expenses. She listed a $217 a month housekeeping expense in addition to her expenses for food, laundry and cleaning, and household supplies. She listed an additional $203 a month for household furniture and furnishings. She has a "reserve for contingencies" of $252 a month, in addition to an allowance for incidentals of $318. She listed a monthly expense for church and other charities of $299, miscellaneous gifts of $120, and $577 a month for clothing. She also listed $622 as an *anticipated* monthly car payment. She was questioned about this item at the hearing below and admitted that the car she was driving was paid for, but that she was looking around for another automobile and estimated that it would cost her that much. She did not present any evidence to substantiate any of her other claimed expenses. Her declaration did not list the value, if any, of her investments. It did list outstanding promissory notes of $53,550 and $57,945 on her investments, but her testimony disclosed that these had been waived.

Appellant had the burden of proving her actual and necessary expenses and her inability to satisfy them out of her own resources. The evidence before the trial court was sufficient to support its decision to award her $500 a month spousal support for the period commencing April 1983 and to terminate support effective October 1986 without a further reservation of jurisdiction based upon a finding of self-sufficiency.

The judgment is affirmed.

Hastings, J.,* and Boren, J., concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.