[No. A031666. First Dist., Div. Five. Mar. 24, 1987.]

In re the Marriage of JEANNETTE PRIETSCH and J. BRYANT CALHOUN.
JEANNETTE PRIETSCH, Appellant, v.
J. BRYANT CALHOUN, Respondent.

648

652

COUNSEL

Kathryn Carey, Jerry Y. Fong and Carey & Carey for Appellant.

Frank Evans for Respondent.

## OPINION

KING, J.—In this case we hold that after a lengthy marriage it is reversible error (1) to modify and terminate spousal support when the income and expenses of the supporting spouse have not changed since the prior order and the needs of the supported spouse continue to outweigh her ability to support herself; (2) to order a substantive stepdown of future spousal support when no evidence has been presented and no determination made by the court that the supported spouse will become more able to meet her financial needs in the future; or, (3) even if the evidence could somehow support a termination of spousal support nine years in the future, for the trial court to give the supporting spouse, without the consent of the supported spouse, the option to pay a lump-sum amount equal to the present value of future payments and obtain an immediate termination of the court's jurisdiction over the issue of future spousal support.

Jeannette Prietsch appeals from an order granting J. Bryant Calhoun's motion to modify and terminate spousal support. She contends the court committed reversible error (1) by ordering a termination of jurisdiction over spousal support nine years in the future, or after payment by Calhoun of a lump-sum amount equal to the present value of the future payments, whichever occurred first; and (2) by automatically decreasing the amount of support payments on an annual basis over a nine-year period. We modify the order to correct for legal error and affirm as modified.

## I

### FACTS

The parties were married for 24 years from 1956 until 1980 and have two adult children. During the marriage Calhoun entered and completed medical school. He is an opthalmologist. In 1956, Prietsch received a bachelor's degree in English literature. From 1966 to 1969, she worked as a systems analyst for Proctor & Gamble. In 1971, she earned a master's degree in science and mathematics, and in 1976 she earned a master's degree in theoretical statistics. She also finished her course work for a doctoral degree, but did not complete her thesis. Shortly after separation, she moved to Stockholm, Sweden, and found a job as a computer programmer. In 1982, she began work as a systems analyst for Stockholm Localtrafik (a public transportation system) at a salary of SKR 114.000 (approximately $19,000 in 1982).

The interlocutory judgment of dissolution, entered July 1950, ordered Calhoun to pay Prietsch spousal support of $1,500 per month for five months, then $1,200 per month thereafter, pursuant to stipulation. In

November 1982, after Prietsch began work as a systems analyst, spousal support was reduced to $600 per month by a stipulated order. Neither order provided for a termination of spousal support, except upon the death or remarriage of Prietsch. In March 1984, Calhoun filed the present motion to modify and terminate spousal support. Prietsch responded with a motion to increase spousal support to $2,000 per month. For the first time, the parties were unable to reach a stipulated resolution of this difficult issue.

After a contested hearing in August 1984, the trial court in its order filed December 6, 1984, found Prietsch's needs "far outweighed" her ability to be self-supporting, and Calhoun's financial responsibilities were "well within manageable limits." No reduction in Calhoun's income was found to have occurred since the prior order. As a result of these findings, the court increased Prietsch's spousal support to $900 per month beginning January 1985. ■ ■ ■ ■ However, the court also ordered a substantive stepdown[1] which automatically reduced the support amount by $100 a month on an annual basis, terminating spousal support "absolutely and forever" after the payment due December 1, 1993. The court also provided Calhoun with an optional plan where, by paying Prietsch prior to December 31, 1984, a cash payment equal to the discounted present value of the future payments ordered, "spousal support would forthwith and forever terminate."

Calhoun exercised the lump-sum payment option provided by the order in a timely manner. The parties entered into a stipulation placing the money in a trust account with monthly payments paid therefrom to Prietsch, pending the resolution of this appeal.

## II

### MODIFICATION OF SPOUSAL SUPPORT

Although Prietsch requested a modification of spousal support to $2,000 per month, she does not contest on appeal the increase ordered from $600 to $900 per month. She does contest the court's order for a substantive stepdown, a lump-sum payment, and for termination.

■ Civil Code section 4801, subdivision (a),[2] provides that "[a]ny order

---

[1] A substantive stepdown of spousal support is one where the court orders a future decrease in amount, often, as here, by reducing monthly payments on an annual basis. A substantive stepdown is to be distinguished from a jurisdictional stepdown where spousal support is ordered paid for a period of time after which no payment is required but the court retains jurisdiction over future spousal support (sometimes by ordering that payments are reduced at a future date to a token amount such as $1 a month). For a more complete discussion see Adams and Sevitch, *California Family Law Practice* (7th ed.) sections N.61-68.

[2] All statutory references will be to the Civil Code unless otherwise indicated.

for support of the other party may be modified or revoked as the court may deem necessary." Thus, the court has broad discretion in awarding or modifying an award of spousal support, but that discretion is not unlimited. (*In re Marriage of Melton* (1980) 107 Cal.App.3d 559, 564 [165 Cal.Rptr. 753].) The court is without authority to modify an order for spousal support unless there has been a material change of circumstances subsequent to the last prior order. (*In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633 [120 Cal.Rptr. 654].) The court may not be arbitrary; it must exercise its discretion along legal lines, taking into consideration the applicable circumstances of the parties set forth in section 4801, subdivision (a), especially reasonable needs and their financial abilities. "A fortiori, 'change' must be based on facts affecting need and ability to pay; a modification based on other considerations is an abuse of discretion." (Hogoboom & King, Cal. Practice Guide: Family Law 1 (Rutter 1986) § 17:40, italics omitted.) ▮ In order to modify the prior order the trial court had to find changes in circumstances had occurred. The November 1982 order was made over two years after Prietsch had moved to Sweden and after she had begun the job she presently holds, so these are not changes in circumstances.

However, the court did find circumstances had changed since the original order, but the changes it found justified increasing Prietsch's support rather than decreasing or terminating it. Although Prietsch has significant education and employable skills and is not a typical "displaced homemaker," at the time of the modification hearing the court found she was not able to provide for her own reasonable needs, even with the $600 a month which Calhoun had been paying for spousal support under the then existing order. The court's increase of spousal support was recognition of that fact. The court found "a significant differential in the parties' earning ability and financial needs," and that "[Prietsch's] needs continue to far outweigh her ability to earn either by direct employment or by reasonable return on investment of her separate property." Prietsch was found to live "in nominal quarters" below "the style" to which the parties "had become accustomed during the course of the marriage," while Calhoun lived "in substantially better quarters" than those which the parties "had been accustomed to during the course of their marriage." His quarters were "basically provided by [Calhoun's] new wife." Finally, the court found Calhoun's income "had not appreciably declined" and his claim of anticipated reduction of income was found to be "speculative."

Thus, the court's findings fully support the increase in spousal support for Prietsch from $600 to $900. ▮ However, for reasons which are unexplained, and in direct contradiction to the findings contained in the court's order, the court ordered the substantive stepdown and the termination of spousal support described above. Absent any factual determination which

would support a reduction and termination of spousal support, and faced with the court's factual determination supporting an increase, we have no alternative, as we next discuss, but to modify those portions of the order providing for a substantive stepdown and for termination of jurisdiction over future spousal support.

■ Our role as an appellate court is not that of factfinder; that is the role of the trial court. We cannot concern ourselves with unreported discussions in chambers or any other claims or matters which are not a part of the record on appeal. Our role is to determine from the record before us whether the findings of the trial court support the order it made.

### III

#### THE SUBSTANTIVE STEPDOWN IN SPOUSAL SUPPORT

■ Prietsch contends the court's order automatically decreasing support payments is based on speculative expectations rather than on reasonable inferences drawn from the evidence presented; thus the court abused its discretion when it ordered a substantive stepdown in spousal support.

■ Although the court has broad discretion in ordering or modifying an order of spousal support, "orders for changes in support to take effect in the future must be based upon reasonable inferences to be drawn from the evidence, not mere hopes or speculative expectations." (*In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 896 [101 Cal.Rptr. 295].) "Orders automatically decreasing in amount at specified intervals cannot be based on mere supposition as to what the supported party's future circumstances might be. Evidence in the record must support a reasonable inference that needs will be less with each step-down and that the spouse can realistically be self-supporting at the time nominal payments are set to begin." (Hogoboom & King, Cal. Practice Guide: Family Law 1, *supra*, § 6:141.)[3]

The court here found changes in circumstances had occurred since the prior order, but the changes found by the court justified increasing Prietsch's award rather than decreasing it. What evidence is there, then, to indicate

---

[3]We do not mean to suggest it would always be an abuse of discretion to order a substantive stepdown of spousal support. After a short-term marriage, where no order for long term or "permanent" support would be appropriate, such an order might be an appropriate vehicle for assisting an economically disadvantaged spouse to make an orderly and less traumatic transition to self-supporting status. In those medium and long-term marriages where the evidence justifies spousal support with the likelihood the supported spouse will become self-sufficient by a future date, a "Richmond" order (*In re Marriage of Richmond* (1980) 105 Cal.App.3d 352 [164 Cal.Rptr. 381]) is preferable to an open-ended order for spousal support. We discuss the nature and use of a "Richmond" order in Part IV of this opinion.

that Prietsch's financial situation will significantly improve over the next nine years? Calhoun argues the evidence presented at the modification hearing sufficiently supports the court's order. First, Calhoun argues Prietsch has unreasonably refused to seek higher paying employment which is available in the San Francisco area.

When evidence exists that the supported spouse has unreasonably delayed or refused to seek employment consistent with her or his ability, that factor may be taken into account by the trial court in fixing the amount of support in modification proceedings. (*In re Marriage of Rosan, supra,* 24 Cal.App.3d at p. 896.) Likewise, termination of support can be ordered where the supported spouse has failed to exercise diligence in seeking employment. (*In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742 [189 Cal.Rptr. 622].)

Here the court declined to make a finding that Prietsch willfully refused to obtain gainful employment in her profession either in the United States or in Sweden. On the other hand, the court apparently agreed with Calhoun's argument when it issued its decision to decrease and terminate support. The court stated at various points in the hearing, "She has chosen a level of remuneration which she probably could have gotten much more remuneration if she stayed here in the United States. . . . All I know is the general level of salaries for people in her position is quite high in this area, has been for years. . . . She is probably capable of supporting herself to that degree [as when she was married] if she were here in the Bay Area." These statements indicate the trial court overlooked the basic rule that Calhoun, in order to obtain a modification and termination of spousal support, had to show a change of circumstances had occurred since the prior order. At that time Prietsch had been in Sweden for two years and had just begun her job as a systems analyst for Stockholm Localtrafik—the same job with the same employer she had at the time of the modification hearing. Thus the fact she was working in Sweden instead of the United States was irrelevant since it was not a change in circumstance since the prior order was made.

The court's apparent consideration of this argument was also erroneous because no evidence in the record supports it. Although Calhoun's counsel repeatedly argued at the modification hearing that Prietsch could make more money in the San Francisco Bay Area than she currently earns in Sweden, he presented no evidence to establish the truth of this assertion. In fact, the only evidence presented to the court concerning Prietsch's willingness to work was outdated, but suggested Prietsch was working close to capacity. A 1982 report from an employment analyst hired by Calhoun stated, "Mrs. Prietsch stands out as a hard working person, looking for job satisfaction. Her analytical mind makes her well suited for systems work. Her logic and verbal ability make her statements very convincing."

■ The salary level available to Prietsch in the San Francisco Bay Area is not a proper subject for judicial notice since it is not a matter of common knowledge (Evid. Code, § 452, subd. (g)) nor is such information indisputable. (Evid. Code, § 452, subd. (h).) In any event, since she was working in the same job in Sweden at the time of the prior order, this factor cannot constitute a change of circumstances under section 4801, subdivision (a).

■ Calhoun next contends the court could reasonably conclude Prietsch's earning capacity would grow in Sweden by virtue of the length of time she lives there. Again, no evidence was presented to establish this fact. Indeed, the court's findings suggest just the opposite. Since the 1982 support order, Prietsch's needs had increased rather than decreased, despite living in housing accommodations of lesser quality than enjoyed by the parties during marriage. Without supporting evidence, any attempt to predict Prietsch's financial circumstances through 1993 is total speculation. Prietsch may or may not advance in her chosen field. The Swedish economy may or may not be able to support systems analysts with Prietsch's credentials.

Calhoun also refers to the favorable rate of currency exchange between Sweden and the United States as justification for the court's order. Although evidence on this issue might constitute a change in circumstances which could justify a decrease in spousal support, there was no evidence this favorable rate of exchange would continue in the future. Indeed, common experience, including the present fall of the dollar on world currency markets, demonstrates how speculative this factor is when considered over a period 10 years into the future. Thus, it cannot support an order for a substantive stepdown in spousal support.

■ Calhoun challenges Prietsch's financial assistance to her parents and argues her travel expenses are extravagant. Both of these factors are irrelevant to our evaluation of the lower court's order. The court found Prietsch's "needs far outweigh her ability to earn." Drawing all inferences in support of the trial court's decision, we must assume the court was referring to Prietsch's *reasonable* needs, as well as her reasonable ability to earn. Thus it makes no difference for the purpose of Calhoun's argument whether the court included or excluded these particular expenses in its final total of Prietsch's reasonable needs: if the court found these expenses to be reasonable, then it made a finding of fact which we cannot disturb on appeal, and if it found these expenses to be extravagant then we must assume it excluded the figures from its determination of Prietsch's reasonable needs. Additionally, the trial court sustained a relevance objection to testimony about the money Prietsch sends to her parents monthly and to testimony about the money she unsuccessfully invested in her parents' business. Thus, it is unlikely the court even considered these expenses in arriving at its decision.

Finally, Calhoun argues the court could reasonably infer that Prietsch's standard of living will improve in the future. Such inferences *must* be based on evidence in the record. (*In re Marriage of Rosan, supra,* 24 Cal.App.3d at p. 896.) Orders modifying spousal support should not "be based on speculation concerning future earnings and employment. Such decisions should instead be deferred until the realized facts demonstrate whether further support is warranted." (*In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 790 [148 Cal.Rptr. 9, 582 P.2d 96].) A trial court acting on a motion for modification of spousal support cannot engage in speculation as to what might possibly be, but is not reasonably certain to occur. Calhoun's reference to Prietsch's expected future inheritance from her parents upon their deaths is not only unsupported by the evidence, but was correctly labeled by the court as "conjectural." If and when she receives the inheritance it may properly be considered in making a modification or termination of spousal support, but could not support a substantive stepdown.

Additionally, Prietsch's educational background is not a "changed circumstance" which warrants a decrease in support. At the time of the prior order, she had the same amount of education which she now possesses. It has not provided her with financial self-sufficiency in the time that has passed since then. Thus, it cannot justify the substantive stepdown provision without additional evidence indicating Prietsch will be moving closer to being able to completely support herself, or has been less than diligent in finding suitable employment.

The critical deficiency with Calhoun's argument and, to the extent the court was swayed by it, the court's order for a substantive stepdown, is that neither has any support in the court's findings or the evidence. In sum, the trial court abused its discretion when it ordered a substantive stepdown in Prietsch's spousal support over a nine-year period without any foundation in the evidence that the relevant factors (see § 4801, subd. (a)) will improve significantly during that time.

## IV

### TERMINATION OF JURISDICTION OVER SPOUSAL SUPPORT

Prietsch's final contention is that the trial court applied the wrong legal standard when it automatically terminated jurisdiction over spousal support at the end of nine years or, at Calhoun's option, upon a lump-sum payment of the present value of the total support obligation called for by the modified order.

*"A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage unless the record clearly indicates that*

*the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction.* In making its decision concerning the retention of jurisdiction, the court must rely only on the evidence in the record and the reasonable inferences to be drawn therefrom. It must not engage in speculation. If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not 'burn its bridges' and fail to retain jurisdiction." (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41], italics added.)

"It is possible that difficulties not contemplated at this time will frustrate even a good faith attempt by the wife to become wholly or partially self-supporting. . . . [A]fter a lengthy marriage a retention of jurisdiction to modify spousal support should be the norm and . . . the burden of justification is on the party seeking termination." (*In re Marriage of Dennis* (1973) 35 Cal.App.3d 279, 285 [110 Cal.Rptr. 619].)

 Prietsch and Calhoun were married for 24 years and, like the parties in *Morrison,* are in their early 50's. As previously discussed, the court found Prietsch's needs continue to far outweigh her ability to support herself, there was a substantial difference in the earning ability of the parties, and Calhoun had substantial ability to continue paying support to Prietsch. Based on these facts, the court increased the amount of spousal support to be paid by Calhoun from $600 a month to $900 a month beginning in 1985. Under *Morrison* and *Dennis,* these facts required the court to retain jurisdiction indefinitely over the issue of future spousal support. However, in contradiction of these rules, the court ordered that after the payment due December 1, 1993, or upon Calhoun's timely exercise of the option to pay a lump sum representing payment of the present value of the future payments which were ordered, spousal support and the court's jurisdiction to extend or modify it would immediately terminate "absolutely and forever."

The court was familiar with *Morrison,* but its explanation reveals a disagreement with and a refusal to follow the rule of law established in *Morrison.* The court did erroneously burn its bridges.

First, the court recognized Prietsch's challenge to the termination of jurisdiction raised a pure issue of law, and it even recited the California Supreme Court's ruling in *Morrison.*[4] However, the court chose to disregard the

---

[4]The following exchange took place between the court and Prietsch's attorney: [¶] "THE COURT: Good point. It is a question of law, am I properly applying [Civil Code section] 4801 and the cases which have determined it? That is what you are saying. Am, I properly applying —I am sorry, I forget the name of the case. It may be the Edwards case, where, in essence, I think it was really dicta, but maybe it was a ruling that the court should always retain jurisdiction in the situation of a lengthy marriage. [¶] "Ms. CAREY: That is Morrison, your Honor. [¶] "THE COURT: Morrison. Thank you. It was a ruling, as I recall it, wasn't just dicta. Didn't they say that expressly? [¶] "Ms. CAREY: Yes, they did. They held that."

*Morrison* rule and decide the case based on its own understanding of the legislative policy behind the Family Law Act modifications of 1969.[5]

Prietsch's attorney pointed out to the court that "Morrison, a Supreme Court case, went on for five pages on why the legislature didn't mean just what you are saying." The court responded, agreeing that "*Morrison and the others keep saying that isn't what the legislature meant.*" (Italics added.)

The court obviously recognized, but disagreed with, *Morrison*'s clear holding that termination of jurisdiction over spousal support after lengthy marriages should not occur without proof the supported spouse can provide for his or her own reasonable needs. The *Morrison* court's review of the Family Law Act's legislative history revealed, "[T]he [1969 Assembly Committee on Judiciary] report does not in any way suggest that when the supported spouse is unemployed or is earning only a small salary, a court should set a jurisdictional termination date based on the mere hope that this will induce that spouse to become self-supporting. *Nor does it suggest that a court is justified in setting a jurisdictional termination date simply to relieve the supporting spouse of a long-term obligation.* . . . [T]here is nothing in this report (or any other legislative history) to indicate that the Family Law Act was intended to be 'some sort of mandate by the Legislature to the courts to relieve [the supporting spouse in every case] of any long, continuing obligation for spousal support.' " (*In re Marriage of Morrison, supra,* 20 Cal.3d at p. 452, quoting *In re Marriage of Rosan, supra,* 24 Cal.App.3d at p. 897, italics added.)

The trial court applied its personal view of the sociological origins of the Family Law Act without any support in the record and in direct contradiction to controlling case law. ▮ "Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court." (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Thus, the trial court was not free to ignore our Supreme Court's ruling and interpretation of legislative intent, regardless of personal beliefs.

▮ There certainly are cases where it is appropriate for the court to terminate jurisdiction over spousal support, even though there has been a lengthy marriage, although, based upon the court's own factual findings, this

---

[5]The court stated, "And I must indicate to you, Ms. Carey [Prietsch's attorney], that my fundamental approach to this matter was based upon what I understood to be the legislative policy when all of these changes [in the Family Law Act] started occurring. . . . So, I guess my problem is what I conceive of the fundamental legislative philosophy in adopting this entire matrimonial set of statutes."

is not such a case. Even *Morrison* recognized retention of jurisdiction was not always required after a lengthy marriage. "These standards will not require a trial court to retain jurisdiction in every case involving a lengthy marriage. In some instances the record will indicate that both spouses are employed, an increasingly prevalent situation today, or that there are sufficient assets available to enable each to provide for his or her needs. In that event, no support or support for only a limited time, without a retention of jurisdiction, would be appropriate. (§§ 4801, subd. (a), 4806.) Where jurisdiction has been retained in the original order, future modification hearings may well reveal that the supported spouse has found adequate employment, has delayed seeking employment, or has refused available employment. At that time, the court may appropriately consider such factors in deciding whether or not to modify its original order. (See, e.g., *In re Marriage of Rosan, supra,* 24 Cal.App.3d at p. 896; *In re Marriage of Lopez, supra,* 38 Cal.App.3d at p. 116.)" (*In re Marriage of Morrison, supra,* 20 Cal.3d at p. 453.)

Ever since *Morrison,* the family law bench and bar, and subsequent appellate court decisions, have exhibited confusion over what constituted a "lengthy marriage" as that term was used in *Morrison.* This confusion has arisen because of the significance and weight *Morrison* placed upon the fact of the length of marriage.

However, as the *Morrison* decision pointed out, "At the time of the interlocutory judgment in this case, Civil Code section 4801, subdivision (a), provided in pertinent part: '[T]he court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable having regard for the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment without interfering with the interests of the children of the parties in the custody of such spouse. (Stats. 1971, ch. 1675, § 3, p. 3602.)' " (*In re Marriage of Morrison, supra,* 20 Cal.3d at p. 442, fns. omitted.) The Legislature has subsequently amended section 4801 on several occasions. It now contains eight circumstances to be considered when determining the issue of spousal support, two of which remain the same as in *Morrison.* Thus, the court must now consider each circumstance which is applicable to a given case, not just the length of the marriage.

These circumstances should be considered in light of legislative intent expressed in the Assembly Judiciary Committee report in approving the Family Law Act. "This report indicates that in those cases in which the supported spouse is working, the amount and duration of support, if any, should reflect this fact. The report also sets forth the Legislature's intent that

courts should encourage supported spouses to seek employment. However, the report does not in any way suggest that when the supported spouse is unemployed or is earning only a small salary, a court should set a jurisdictional termination date based on the mere hope that this will induce that spouse to become self-supporting." (*In re Marriage of Morrison, supra,* 20 Cal.3d at p. 452.) Indeed, our Supreme Court in *Morrison* recognized that "[l]imiting the duration of support so that both parties can develop their own lives, free from obligations to each other, is a commendable goal." (*Ibid.*)

Thus, when spousal support is ordered and the duration and a termination date are contemplated, the trial court should not make its decision solely upon the duration of the marriage, but must consider each of those circumstances set forth in section 4801, subdivision (a), which are applicable to the case. The duration of the marriage, although only one of eight circumstances listed in section 4801, subdivision (a), is one, unlike some of the others, which must be considered by the court in every case where spousal support is at issue. No bright line can be drawn to clearly distinguish a short-term marriage from a medium-term marriage, or when the length of the marriage is so long that it is not medium term, but is a lengthy marriage. In part, this is because the duration of the marriage must not only be considered in conjunction with the other applicable circumstances from section 4801, subdivision (a), but also in conjunction with what *Morrison* found to be a "commendable goal," that the duration of spousal support be limited so that both parties, where possible, can develop their own lives, free from obligations to each other.

■■■ Since there can be no bright line, can guidelines be fashioned as to how duration of the marriage should be considered by trial courts? In short-term marriages the duration of the marriage, considered alone, will usually militate against any but short-term spousal support with a fixed termination date. In short-term marriages spousal support will most usually be ordered where the needs of minor children or the employment circumstances of the supported spouse require spousal support until the supported spouse can readjust to single status. In medium-term marriages where spousal support is ordered, the duration of the marriage is of greater significance, but by itself does not preclude the exercise of the court's discretion by fixing a date for the termination of jurisdiction over spousal support. The longer the marriage the more likely it is that it will constitute an abuse of discretion for the court to fix a date for termination of jurisdiction over the issue of future spousal support without a clear showing that it is reasonably probable the supported spouse will be self-sufficient by the termination date.

We emphasize that the circumstance of the duration of the marriage is only one of the eight circumstances the Legislature has required the court

to consider pursuant to section 4801, subdivision (a), when making an order for spousal support. Some of these circumstances may not be applicable to the case at issue. Others may be found by the court to be of greater importance in the case or may impact on the circumstance of the duration of the marriage. For example, the duration-of-the-marriage circumstance may have to be considered in conjunction with the circumstance of the age or health of the parties before a proper exercise of discretion to fix a termination date for jurisdiction over spousal support would pass appellate muster. Even assuming good health, the circumstance of a 10-year marriage might militate against a fixed date at which time jurisdiction over spousal support would terminate if the parties were in their 60's, but militate in favor of a termination date if the parties were 30 years of age.

With regard to fixing a date for the termination of jurisdiction over spousal support, one court has observed "[W]e have found no case declaring it to be an abuse of discretion not to terminate jurisdiction." (*In re Marriage of Wright* (1976) 60 Cal.App.3d 253, 257 [131 Cal.Rptr. 870].) However, for a trial judge to not fix a termination date because of concern about reversal, when he or she believes one is appropriate under the circumstances, is not only a failure to follow the law, it is a failure to follow the legislative scheme contemplated by section 4801 which has the goal, where possible, of allowing the parties to develop their lives free of obligations to each other. Having conducted the trial, the trial judge knows much more about the parties and what constitutes an appropriate duration for spousal support than will ever be known by a later judge called upon to decide a motion for termination of jurisdiction on a busy domestic relations law and motion calendar.

For this reason the trial judge must not be reluctant and, indeed, has a duty to fix a termination date for spousal support where justified, after considering the circumstances set forth in section 4801, subdivision (a), which are applicable to the case, and the reasonable inferences to be drawn from the evidence. Likewise there should be no reluctance to have the duration for spousal support open-ended where the evidence and the section 4801, subdivision (a), circumstances in the case justify it. If the trial judge believes a termination date is appropriate but is concerned that future changes in circumstances might require an extension, the proper approach is to fix a termination date and reserve jurisdiction until that date to consider a motion to modify the termination date.

If the trial judge makes what all too often is the typical order, that is, spousal support of a specified amount payable with no termination date, the judge hearing a motion to terminate years later may conclude that the trial judge really intended that spousal support should not end except upon

the death of the parties or the remarriage of the supported spouse. If that is not what the trial judge intends, he or she owes a duty to the parties, and to the colleague who will hear a future motion to terminate jurisdiction, to say so in ordering spousal support. Both the parties and any judge hearing future motions are entitled to know the intentions of the trial judge in ordering spousal support.

 Where the duration of the marriage is too great to be short-term, whether it is a medium or long-term marriage, if the court is presented with evidence justifying an open-ended order for spousal support, there should not be any termination date fixed. On the other hand, if the evidence, considering the applicable circumstances under section 4801, subdivision (a), justifies spousal support for a fixed term with jurisdiction to then end, the court should not be reluctant to make such an order, especially in a medium-term marriage. If the court feels the evidence justifies an order terminating jurisdiction at a future date, but is concerned about unforeseeable circumstances which might arise prior to that date, the proper approach would be to issue the kind of order approved by *In re Marriage of Richmond* (1980) 105 Cal.App.3d 352 [164 Cal.Rptr. 381]; what has become known as a "Richmond" order.

A "Richmond" order is one which sets spousal support for a fixed period based upon evidence that the supported spouse will be self-supporting by the end of the period. Most typically, as in *Richmond,* this evidence comes from the testimony of the supported spouse whose post-dissolution game plan contemplates a point in time at which he or she will be self-sufficient. It may be the result of completing future education or training, at which time full-time employment should produce the income necessary to meet the reasonable needs of the supported spouse.

 In order to avoid the *Morrison* prohibition against the trial court burning its bridges by fixing a definite date in the future at which time jurisdiction over spousal support will terminate, the court in a "Richmond" order retains jurisdiction to modify both the amount and term for jurisdiction over spousal support conditioned upon the supported spouse, prior to the date set for termination of jurisdiction, filing a motion and showing good cause why the order should be modified either as to amount or term of jurisdiction, or both.

 The effect of a "Richmond" order is to tell each spouse that the supported spouse has a specified period of time to become self-supporting, after which the obligation of the supporting spouse will cease. The effect may be of greater psychological importance, than legal. However, if things do not work out as contemplated, the supported spouse can, upon a showing of good

cause, request a change in the original order as to amount or as to the term for jurisdiction over the issue of spousal support. A "Richmond" order psychologically prepares the supported spouse for the time when he or she must be self-supporting. It also places the burden of showing good cause for a change in the order upon the one who is most able to exercise the control necessary to meet the expectations the trial judge had in making the order.

We believe that a "Richmond" order is the most appropriate form of order for spousal support in all cases except (1) where spousal support is either not ordered, or is ordered for a fixed term of short duration, (2) in the most lengthy marriages where the circumstances justify truly "permanent" spousal support, or (3) where the supported spouse does not possess the capacity to become self-sufficient.

We reemphasize, however, that the duration of the marriage is only one of the circumstances section 4801, subdivision (a), requires be considered by the court in fixing a termination date for jurisdiction over spousal support.

■ Finally, we reach the issue of the trial court having ordered that Calhoun would have the option of obtaining an immediate termination of the court's jurisdiction over future spousal support by paying in one lump-sum the present value of the future spousal support payments which were ordered. We start our discussion of this issue by noting that Calhoun can cite no authority for the propriety of such an order after a long-term marriage, because there is none. We cannot foresee any circumstances where such an order would not constitute an abuse of discretion. Even if this insurmountable hurdle could be overcome, we would have to reverse the trial court here because the findings which were made do not support such an order and no evidence was presented to support it. In making the order the court engaged in the kind of speculation about the future which *Morrison* and *Dennis* prohibit.

Even if there had been evidence to support the substantive stepdown, it would have been based upon a showing that Prietsch would, each year, have an increased ability to provide for her own support. If this assumption failed, Prietsch would be able to return to court and seek a modification. By unilaterally giving Calhoun the ability to terminate the court's jurisdiction, the court prevented Prietsch from exercising her right to seek a modification based upon a change of circumstances. What if, before the final payment ordered December 31, 1993, Prietsch's health failed or her employment ceased through no fault of her own and she could not obtain other employment because of her age? In the words of *Morrison,* the court should not burn its bridges by terminating spousal support when not justified by the evidence. We do not suggest that the trial court's idea of how to resolve the contested

issue of spousal support in the instant case would be an inappropriate sugges-
tion for a judge to make in a settlement conference. However, then it would
resolve the issue only with the agreement of both parties. That is a far cry
from forcing it upon a party over objection after a contested hearing.

 In the instant case the trial court committed reversible error when
it failed to retain jurisdiction over future spousal support after this 24-year
marriage when there was no finding, nor any evidence to support a finding
that Prietsch would be able to meet her financial needs at the time selected
for termination of jurisdiction over spousal support. Even if the
order terminating jurisdiction nine years in the future could be upheld, it
was reversible error to unilaterally permit Calhoun to accelerate the termina-
tion date by payment of the present value of the payments ordered.

## V

### Disposition

 The order is modified to provide that J. Bryant Calhoun shall pay to Jean-
nette Prietsch the sum of $900 per month in spousal support commencing
on January 1, 1985, and continuing until the death of either party, Jeannette
Prietsch's remarriage, or further order of court, whichever shall first occur.
Jeannette Priestch shall recover her costs on appeal, including reasonable
attorney fees to be determined by the trial court. (Cal. Rules of Court, rule
26.)

 Low, P. J., concurred.

HANING, J.—I respectfully dissent. The trial court has broad discretion
in setting spousal support. (*In re Marriage of Morrison* (1978) 20 Cal.3d 437,
454 [143 Cal.Rptr. 139, 573 P.2d 41]; *In re Marriage of Slater* (1979) 100
Cal.App.3d 241, 249 [160 Cal.Rptr. 686]; Civ. Code, § 4801.) Thus, in
reviewing a spousal support order pursuant to a claim of error, our standard
is whether the trial court abused its discretion. In *Morrison,* our Supreme
Court held that trial courts should not terminate jurisdiction over spousal
support following dissolution of a lengthy marriage "unless the record clearly
indicates that the supported spouse will be able to adequately meet his or
her financial needs at the time selected for termination of jurisdiction." (20
Cal.3d at p. 453.) The Supreme Court did not require that jurisdiction always
be maintained, but merely announced standards for trial courts in making
their determination. (*Ibid.*) So long as these standards are observed, trial
courts are operating within their discretion.

 There is some difficulty in reviewing the challenged support order herein
due to the manner in which the parties presented the case below, thereby

confusing the reconciliation process between the evidence, the findings and the resulting order. To begin with, the reporter's transcript contains numerous references to depositions, both as to deposition testimony and stipulations which were entered into at the time the depositions were taken. The parties and the trial court were obviously familiar with the content of the depositions, and relied thereon. However, they were not made part of the record before us. In addition, certain proceedings transpired in chambers which are unreported, but during which various representations were apparently made, and upon which the trial court relied, *without objection and with the apparent concurrence of both parties,* in rendering its order.

The trial court found that "substantial changes of circumstances" occurred for *both* parties. It then found a "significant differential" between the earning ability and financial needs of the parties and that Ms. Prietsch's needs outweighed her ability to earn through employment or through a reasonable return on investment of her separate property.

The record supports the trial court's finding concerning a reasonable return on investment of Ms. Prietsch's separate property. Although she had a substantial sum on deposit, she was saving it to purchase a home for herself and the trial court could have deemed this to be a reasonable allocation of that resource. It is also undisputed that Dr. Calhoun earns substantially more than Ms. Prietsch. However, in construing the court's finding concerning the change of circumstances and Ms. Prietsch's earning ability, I interpret the trial court somewhat differently than the majority.

During the hearing below, it was not seriously disputed that Ms. Prietsch was capable of earning a higher salary. However, she refused to work in private industry and, for personal political reasons, also refused to work for any agency or entity which was involved with the "defense" industry. In addition, although her reasons for doing so are undisclosed, it was stressed that she had chosen to relocate her permanent home in a country where she could not speak, read nor write the national language. As a result, she had to undergo a substantial period of acclimation in order to maximize her earning potential. By the time of the hearing at issue she had apparently overcome most of the difficulties she encountered upon her initial move to Sweden. As a consequence, I read the trial court's reference to her change in circumstances to refer to her substantial adjustment to the Swedish employment market, and its reference to her ability to meet her needs to reflect its concern with her then *present* earning capacity, rather than a finding that she is *unable* to earn more in the near future. Given this interpretation, it cannot be said that a stepdown order is entirely inappropriate.

My interpretation of the findings is further bolstered by the fact that Ms. Prietsch did *not* argue to the trial court that a stepdown was unsupported.

Rather, she argued solely that it was improper to terminate jurisdiction over support after a marriage of this length. Her argument as to insufficiency of the evidence came *after* the fact of the order.

Reading the trial court's comments in context, it appears to me that it understood the law and its obligations. It contrasted the instant case with *Morrison,* which involved a 54-year-old woman ending a 28-year marriage with a health problem, no work history or job skills, and capable of earning only $100 per month. The trial court in the instant case noted the obvious difference between the supported spouse in *Morrison* and Ms. Prietsch: "But here we have a very unusual situation where [Ms. Prietsch] has incredible educational capability of supporting herself, capable of supporting herself in Sweden or here. Not capable of supporting herself in Sweden to the same degree of standard of living as the parties enjoyed when they were married. She is probably capable of supporting herself to that degree if she were here in the Bay Area. [¶] I cannot conceive of, with her education and her present age and her abilities, why in the course of time, . . . . [s]he couldn't increase her income, increase her standard of living to a point very close to what she enjoyed as Dr. Calhoun's wife." (See, e.g., Civ. Code, § 4801, subd. (a)(6).)

The trial court's observations are supported by substantial evidence. Ms. Prietsch's contribution to the support of her parents and her average monthly air fare to the United States to visit them exceeded the amount of support she was then receiving. The fact that her parents were then in their mid-eighties supports a finding that her contribution to their support and her travel expenses will not be required by the time spousal support was ordered to end. She also anticipated purchasing a home in the near future. Given the fact that she had become reasonably fluent in Swedish, thereby increasing her earning ability, and that she would soon be able to purchase a home and move out of her small apartment, the trial court could also find that her income and lifestyle were subject to imminent improvement. I finally note that in spite of her request for a support increase, Ms. Prietsch was able to contribute to the support of another individual described only as a "friend," to make charitable and political contributions, and to save a portion of her salary.

Finally, and most significantly, Ms. Prietsch's political commitments have led her to decline employment which is substantially more remunerative. No matter how laudable her beliefs, her former spouse cannot be made to bear the price. She should bear the consequences of her own voluntary actions. If, for example, she deemed it appropriate to simply abandon her employment in order to devote her full time, without pay, to the advancement of a political cause, can she seek an increase in support? By the same token, if she now wishes to leave Sweden and settle in Tokyo, must Dr. Calhoun

be compelled to increase or extend his support while she becomes fluent in Japanese? If she decides to contribute to the support of additional "friends," must he also be expected to defray these expenses? I think not, and the trial court can properly consider all these factors in making its order. (Civ. Code § 4801.)

Another problem I have with the majority's disposition is that it fails to consider that the trial court's order regarding the amount of monthly support is related to its overall scheme. If the trial court cannot terminate support and jurisdiction under its present timetable, it might have exercised its discretion in some other fashion. That discretion does not lie with us, and we should not be establishing timetables or monthly allotments for support. I emphasize that, based on the trial record and the manner in which the case was argued before us, it appears that the parties and the trial court were operating under different assumptions and a different understanding of the facts than the majority's interpretation. They certainly agreed below that the trial court could rely upon and consider matters which they failed to place in the record. But even as to the evidence which is in the record before us, I conclude it is sufficiently substantial to support the court's order. If the majority's understanding is incorrect, Dr. Calhoun should be entitled to commence a new hearing below and lay out all the facts and clarify the findings. Support orders are best determined by the trial courts, rather than appellate tribunals.

I conclude the record is sufficient to establish a complete termination of support if the trial court felt it was appropriate to do so. If support can be terminated, the supported spouse cannot legitimately complain about a step-down. It appears here that the trial court was attempting to ease the transition to self-sufficiency for Ms. Prietsch and, if so, the payoff portion of its order should be upheld. I concur with the majority that if the trial court determines that it should retain jurisdiction for a period of time, it cannot permit the supporting spouse to terminate jurisdiction by paying off the present value. To do so would remove the court's ability to respond to a change of circumstances within the original time period. However, I do not agree that lump-sum payments are improper per se, under all circumstances.

In conclusion, I would affirm, or at least remand the matter for clarification of findings and reconsideration under *Morrison*.