ARLENE WALTERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walters v. Commissioner
Docket No. 1965-93
United States Tax Court
T.C. Memo 1994-639; 1994 Tax Ct. Memo LEXIS 662; 68 T.C.M. (CCH) 1533; December 29, 1994, Filed *662 Decision will be entered for for respondent. P was divorced in 1985. Pursuant to a Judgment of Dissolution, entered by the Los Angeles County Superior Court, P's ex-husband was ordered to pay spousal support to P in the amount of $ 4,000 per month. The Superior Court, as part of the spousal support award, reserved jurisdiction to modify or terminate such support in the event of a material change in P's or P's ex-husband's financial circumstances. In 1989, P received a total of $ 48,000 in spousal support but reported alimony only in the amount of $ 10,000 on her 1989 return. P claims that the remaining $ 38,000 of spousal support received in 1989 is not alimony, as defined in sec. 71(b), I.R.C., because the Superior Court's reservation of jurisdiction to modify or terminate spousal support violated the minimum term rule provided in sec. 71(f)(1), I.R.C.Held: the Superior Court's reservation of jurisdiction to modify or terminate spousal support did not violate the minimum term rule provided in sec. 71(f)(1), I.R.C.; Held, further, sec. 1.71-1T(d)(Q&A-23), Temporary Income Tax Regs., 49 Fed. Reg. 34451-34452 (Aug. 31, 1984), was reasonable *663 and not plainly inconsistent with sec. 71(f)(1), I.R.C.
For petitioner: Gordon B. Cutler. For respondent: Thomas E. Carter. NIMS
NIMS
MEMORANDUM OPINION NIMS, Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1989 in the amount of $ 4,386. The issue for decision is whether a State court's reservation of jurisdiction to modify or terminate spousal support payments on grounds of changed financial circumstances violates the minimum term rule of section 71(f)(1). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time petitioner filed her petition, she resided in Sherman Oaks, California. Prior to 1989, the year involved in this case, petitioner was married to Bernard M. Smolens (Smolens). On October 8, 1985, the Los Angeles County Superior Court (Superior Court), by written order, dissolved the marriage of over 10 years between petitioner and *664 Smolens. As part of the Judgment of Dissolution (Judgment), the Superior Court ordered Smolens to pay spousal support to petitioner. The Judgment provided in part: 6. Spousal Support: The respondent [Smolens] is ordered to pay to the Petitioner [Mrs. Walters, the petitioner herein] as and for spousal support the sum of $ 4,000.00 per month, payable on the first of each month, commencing August 1, 1985 and continuing to the death of Respondent or the death or remarriage of the Petitioner or further order of the Court, as to which jurisdiction is reserved. [Judgment at 9-10, In re Marriage of Smolens, No. D 76833 (Super. Ct. Oct. 10, 1985); emphasis added.]
During 1989 Smolens paid petitioner $ 4,000 per month pursuant to the terms of the Judgment. In 1991, Smolens applied to the Superior Court to reduce his spousal support obligation. As a basis for his application, Smolens alleged several grounds, including: (1) His semi-retirement from medicine, (2) his reduced monthly income, and (3) his deteriorating physical condition. On February 24, 1992, the Superior Court modified its Judgment and ordered that Smolens' spousal support obligation be reduced to $ 3,500 *665 per month commencing August 1, 1991. Prior to July 1, 1991, Smolens had paid petitioner $ 4,000 per month since 1985 in accordance with the original Judgment. Since her divorce from Smolens, petitioner has not remarried. As indicated above, during 1989 petitioner received spousal support from Smolens in the amount of $ 48,000. On her 1989 return, petitioner included in her gross income $ 10,000 as alimony. Gross income includes amounts received as alimony. Secs. 71(a), 61(a)(8). If alimony is includable in the payee spouse's gross income under section 71(a), the payor spouse is allowed to deduct the amount of the alimony paid. Secs. 215(a) and (b). For purposes of being included in gross income, alimony is defined by section 71(b)(1), which provides in pertinent part:
(1) IN GENERAL. -- The term "alimony * * *" means any payment in cash if -- (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument, (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215, (C) in the case of an individual *666 legally separated from his spouse under a decree of divorce * * *, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.
In 1989, pursuant to the Judgment, petitioner received from Smolens 12 cash payments, each in the amount of $ 4,000. The Superior Court's Judgment qualifies as a divorce instrument. Sec. 71(b)(2)(A). The Judgment did not provide that the payments were not to be included in petitioner's gross income nor not deductible by Smolens. Neither petitioner nor respondent alleges that petitioner and Smolens were members of the same household in 1989. Finally, the Judgment provided that the payments were to be terminated upon the death of either petitioner or Smolens or the remarriage by petitioner. Thus, the payments received by petitioner in 1989 constituted alimony as defined in section 71(b)(1), and were to be included in petitioner's gross income unless not includable *667 for some other reason. Petitioner contends that the Superior Court's reservation of jurisdiction to modify or terminate Smolens' obligation to pay spousal support violated the minimum term rule provided in section 71(f)(1). According to petitioner, the Superior Court's order of spousal support was "open-ended" and subject to premature termination in the event of a material change in the economic circumstances of either party. On the other hand, respondent argues that the Superior Court's spousal support order was a continuing order of indefinite duration which satisfied the 6-year post-separation requirement of section 71(f)(1). Specifically, section 71(f)(1) (in the version applicable to this case) provided: (f) SPECIAL RULES TO PREVENT EXCESS FRONT-LOADING OF ALIMONY PAYMENTS. -- (1) REQUIREMENT THAT PAYMENTS BE FOR MORE THAN 6 YEARS. -- Alimony or separate maintenance payments (in excess of $ 10,000 during any calendar year) paid by the payor spouse to the payee spouse shall not be treated as alimony or separate maintenance payments unless such payments are to be made by the payor spouse to the payee spouse in each of the 6 post-separation years (not taking into account *668 any termination contingent on the death of either spouse or the remarriage of the payee spouse).
Section 71(f)(1), the minimum term rule, was added to the Internal Revenue Code by the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, section 422(a), 98 Stat. 795-796. In addition to the minimum term rule, section 422(a) of DEFRA added section 71(f)(2) to the Internal Revenue Code. Section 71(f)(2), the recapture rule, provided that certain excessive alimony payments were effectively property settlements and required the payor spouse to include in his or her gross income excessive payments previously deducted, whereas the payee spouse received a deduction for previously included excessive payments. The minimum term rule, as added by DEFRA, applied to divorce instruments executed after December 31, 1984. DEFRA, sec. 422(e), 98 Stat. at 798-799. As mentioned previously, the Judgment was executed on October 8, 1985. The minimum term rule was short lived, as Congress eliminated it as part of the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, sec. 1843, 100 Stat. 2853. However, Congress retained section 71(f)(2)'s recapture rule, albeit in a modified form. 98 Stat. at 2853-2854. *669 Although the TRA eliminated the minimum term rule, the amendments to section 71(f) did not in any event apply to the Judgment at issue in this case. 98 Stat. at 2854-2855. Payments of alimony in excess of $ 10,000 per year were made by Smolens to petitioner beyond the 6-year period following the Superior Court's Judgment. Although the payments were reduced from $ 4,000 per month to $ 3,500 per month as of August 1, 1991, petitioner does not contend that the reduction of the payments violates the minimum term rule. Rather, petitioner argues that because the Superior Court reserved jurisdiction to terminate the spousal support award, there was no guarantee that the payments would continue for at least six years following the divorce (disregarding the death or remarriage contingency). According to petitioner, the possible termination of spousal support violates the minimum term rule because of section 71(f)(1)'s "to be made" language. As support, petitioner contends that the use by Congress of the phrase "to be made" requires prospective application of the minimum term rule; thus, we should analyze the Judgment at the time it was entered to determine whether the payments were *670 required to be made for all of the six years following the divorce. Respondent, on the other hand, asserts that the "economic contingency" embodied in the Superior Court's retention of jurisdiction is to be ignored, relying upon section 1.71-1T(d)(Q&A-23), Temporary Income Tax Reg., 49 Fed. Reg. 34457-34458 (Aug. 31, 1984), which provides in pertinent part: For purposes of determining whether alimony * * * payments are to be made in any year, the possible termination of such payments upon the happening of a contingency (other than the passage of time) which has not yet occurred is ignored (unless such contingency may cause all or a portion of the payment to be treated as a child support payment).
Petitioner admits being "mindful" of this temporary regulation, but contends that the regulation is not entitled to be given any weight because it does not "harmonize" with the language and purpose of section 71(f)(1). It is a well-settled rule of statutory construction that statutes are to be construed so as to give effect to their plain and ordinary meaning unless to do so would produce absurd or futile results. Rath v. Commissioner, 101 T.C. 196, 200 (1993) *671 (citing United States v. American Trucking Associations, 310 U.S. 534, 543-544 (1940)). When following a statute's purpose rather than its literal words, the Supreme Court has stated: Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." * * * [United States v. American Trucking Associations, supra at 543-544; fn. refs. omitted.]
However, when the statute is clear on its face, we require unequivocal evidence of its legislative purpose before construing it in a manner that overrides the plain meaning of the statutory words. Rath v. Commissioner, supra at 200-201 (citing Halpern v. Commissioner, 96 T.C. 895, 899 (1991); Huntsberry v. Commissioner, 83 T.C. 742, 747-748 (1984)). *672 At first glance, the language of section 71(f)(1) appears to support the proposition that alimony payments may not be subject to any contingency other than the death of either party or the remarriage of the payee spouse. However, when section 71(f)(1) is viewed in the context of the alimony rules and their unequivocal legislative purpose, excluding the payments from petitioner's gross income on the grounds that the Superior Court reserved jurisdiction to modify or terminate the award would produce an unreasonable result, as demonstrated below. The House Report issued in connection with section 422 of DEFRA stated that A principal purpose for the present tax treatment of alimony is to relieve the payor of the burden of paying tax on the income which is transferred to the payee spouse as alimony and to impose that burden on the spouse receiving the alimony. * * * [H. Rept. 98-432 at 194 (1983).]
As to the reason for redefining alimony as provided in section 71(b), the committee stated that The committee believes that the present law definition of alimony is not sufficiently objective. Differences in State laws create differences in Federal tax consequences and administrative *673 difficulties for the IRS. The committee believes that a uniform Federal standard should be set forth to determine what constitutes alimony for Federal tax purposes. * * * [Id.]
As already mentioned, the payments received by petitioner from Smolens in 1989 satisfied the definition of alimony provided in section 71(b)(1). Petitioner seeks to avoid part of the tax consequences of Congress's redefinition of alimony, as expressed in section 71(b), by relying upon what she considers to be the plain meaning application of section 71(f). Section 71(f) was not intended to provide such shelter. Section 71(f) was entitled "SPECIAL RULES TO PREVENT EXCESS FRONT-LOADING OF ALIMONY PAYMENTS." As to the purpose of the minimum term rule and the recapture rule provided in section 71(f), the committee stated: The committee bill attempts to define alimony in a way that would conform to general notions of what type of payments constitute alimony as distinguished from property settlements and to prevent the deduction of large, one-time lump-sum property settlements. [Id.]
From the above-mentioned title and committee report, we conclude that the unequivocal purpose of section *674 71(f) was to prevent the masking of property settlements as deductible alimony payments. With this purpose in mind, an analysis of California law pertaining to both alimony awards and a trial court's reservation of jurisdiction to modify or terminate such awards establishes that the evil that the minimum term rule was designed to preclude was not present in this case. The California Supreme Court has announced: It is to be recognized that the term "alimony" does not contemplate a settlement of property interests or general endowment of wealth. "* * * [alimony] has for its sole object the provision of food, clothing, habitation, andother necessaries for * * * support." * * * [Bradley v. Superior Court, 310 P.2d 634, 642 (Cal. 1957); citations omitted, emphasis added.]
As to the retention of jurisdiction by trial courts for purposes of modifying or terminating spousal support obligations, the California Supreme Court has announced: A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his *675 or her financial needs at the time selected for termination of jurisdiction. * * * If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not "burn its bridges" and fail to retain jurisdiction. * * * Where jurisdiction has been retained in the original order, future modification hearings may well reveal that the supported spouse has found adequate employment, has delayed seeking employment, or has refused available employment. At that time, the court may appropriately consider such factors in deciding whether or not to modify its original order. [In re Marriage of Morrison, 143 Cal. Rptr. 139, 150 (1978); citations omitted.]
Subsequent to the California Supreme Court's decision in In re Marriage of Morrison, supra, California courts have held that in certain circumstances it is reversible error for the trial court not to retain jurisdiction when spousal support has been ordered. See In re Marriage of Vomacka, 204 Cal. Rptr. 568 (1984); In re Marriage of Prietsch, 235 Cal. Rptr. 587 (Ct. App. 1987). However, *676 as to a court's authority to modify spousal support orders, it has been stated: The court is without authority to modify an order for spousal support unless there has been a material change of circumstances subsequent to the last prior order. The court may not be arbitrary; it must exercise its discretion along legal lines, taking into consideration the applicable circumstances of the parties set forth in section 4801, subdivision (a), especially reasonable needs and their financial abilities. "A fortiori, 'change' must be based on facts affecting need and ability to pay; a modification based on other considerations is an abuse of discretion." * * * [In re Marriage of Prietsch, supra at 589; citations omitted.]
California Civil Code section 4801(a) (Matthew Bender 1985), the code section referred to by the Court in In re Marriage of Prietsch, is used both for purposes of the initial award of spousal support and any modification of such award. Specifically, at the time the Judgment was executed, section 4801(a) provided in pertinent part: (a) In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order *677 a party to pay for the support of the other party any amount, and for any period of time, as the court may deem just and reasonable. In making the award, the court shall consider all of the following circumstances of the respective parties: (1) The earning capacity of each spouse, taking into account the extent to which the supported spouse's present and future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported spouse to devote time to domestic duties and to the extent to which the supported spouse contributed to the attainment of an education, training, or a license by the other spouse. (2) The needs of each party. (3) The obligations and assets, including the separate property, of each. (4) The duration of the marriage. (5) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse. (6) The time required for the supported spouse to acquire appropriate education, training, and employment. (7) The age and health of the parties. (8) The standard of living of the parties. (9) Any other factors which it deems just *678 and equitable. Any order for support of the other party may be modified or revoked as the court may deem necessary, except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke. * * * [Cal. Civ. Code sec. 4801(a) (Matthew Bender 1985).]
Given the purpose for which jurisdiction is reserved and the factors a California court must consider when exercising that jurisdiction, it would be unreasonable to conclude that the Superior Court reserved jurisdiction to modify or terminate the Judgment with the intent of effectuating a property settlement between petitioner and Smolens. Rather, the only conclusion that can be drawn is that Smolens was ordered to pay $ 4,000 per month to petitioner in order to meet her support needs. As is customary in California, if not required, the Superior Court reserved jurisdiction to modify or terminate this support should either petitioner's support needs materially change or should Smolens' ability to pay materially change. It was not until August 1, 1991, when Smolens' ability to pay did materially change, that the support payments were reduced to $ 3,500 per *679 month. Petitioner argues that under California law, the parties could have expressly agreed that the Superior Court was not to retain jurisdiction. See Cal. Civ. Code sec. 4811(b) (Matthew Bender 1985). Accordingly, petitioner argues that she and Smolens could have agreed to remove the economic contingency which in turn would have avoided violation of the minimum term rule and required petitioner to include the payments in her gross income while allowing Smolens to deduct the payments. Acceptance of petitioner's argument would have subjected the parties, and parties similarly situated in the future, to an unreasonable and inequitable dilemma. In order to preserve the desired tax consequences provided by sections 71(a) and 215(a), the parties would have had to sacrifice the protection afforded by the Superior Court's reserved jurisdiction in the event of a material change in the parties' financial circumstances. It defies logic to assume that petitioner and Smolens intended to alter the tax consequences to either of them by acquiescing in the modification provision of the Judgment, but that is what petitioner's argument suggests. But if so, they need not have resorted to such *680 an indirect device. Section 71 itself allows parties to provide in their divorce instrument that the payments will not be included in the payee's gross income nor deductible by the payor. See sec. 71(b)(1)(B); see also sec. 1.71-1T(b)(Q&A-8), Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984). Thus, to the extent petitioner and Smolens might have wished to alter the tax consequences of the support payments, they could have done so under section 71 without having to sacrifice the protection afforded to both of them by the Superior Court's reserved jurisdiction. Given the purpose of section 71(f), as discussed above, we may now address the issue of the validity of section 1.71-1T(d)(Q&A-23), Temporary Income Tax Regs., supra at 34457-34458, as applied to the facts of this case. Temporary regulations are entitled to the same weight as final regulations. Truck & Equipment Corp. v. Commissioner, 98 T.C. 141, 149 (1992); Nissho Iwai American Corp. v. Commissioner, 89 T.C. 765 (1987). The regulation at issue was prescribed by the Secretary pursuant to section 7805(a), which grants *681 authority to the Secretary to prescribe all needful rules and regulations for enforcing the Internal Revenue Code. Our task is to determine whether the regulation carries out the Congressional mandate of section 7805(a) in a reasonable manner. National Muffler Dealers Association v. United States, 440 U.S. 472, 477 (1979). Provided a regulation is neither unreasonable nor plainly inconsistent with the statute, it should be upheld. Bingler v. Johnson, 394 U.S. 741, 750 (1969). Section 1.71-1T(d)(Q&A-23), Temporary Income Tax Regulations, supra, provides that a contingency, other than a contingency which in effect disguises child support as alimony, will be ignored if it fails to occur for purposes of applying the minimum term rule. Under section 71(c)(2), if alleged spousal support was to be reduced upon the occurrence of a contingency relating to a child (i.e., obtaining the age of majority), the amount of the reduction is to be considered as nonalimony and not subject to inclusion by the payee spouse or deduction by the payor spouse. Section 71(c)(2) evidences the concern of Congress that parties may try to *682 disguise child support as deductible alimony. The temporary regulation was drafted so as not to disturb the rule provided in section 71(c)(2) which was designed to prevent disguised child support being treated as alimony. Further, the rules provided in section 71(f), which were designed to prevent disguised property settlements, are also not disturbed by the temporary regulation. As permitted under California law, the Superior Court reserved jurisdiction to modify or terminate Smolens' spousal support obligation in the event the economic circumstances of the parties changed petitioner's support needs or Smolens' financial ability to pay. In contrast to the situation that section 71(f)(1) was designed to prevent, Smolens' spousal support obligation was not fashioned with a contingency such that its occurrence would effectively convert the obligation into a property settlement. Ignoring the contingency created by the Superior Court's reservation of jurisdiction, in accord with the temporary regulation, is not unreasonable nor plainly inconsistent with section 71(f)(1). Additionally, petitioner argues that if the minimum term rule is not applied prospectively, then a termination *683 of spousal support payments within the first six years could produce drastic consequences. By way of example, petitioner argues that if a spouse is ordered to pay alimony in excess of $ 10,000 per year and in year five the payments are terminated by a court order, then the retrospective application of the minimum term rule would cause the payments made in years one through four to be nonalimony. Petitioner adds that in such a situation the statute of limitations for both filing a claim for refund by the payee spouse and asserting a deficiency against the payor spouse would have expired for year one. We are not required to confront this possibility in this case because the alimony payments were not, in fact, terminated within the 6-year period following the divorce. In sum, the payments received by petitioner in 1989 qualified as alimony under the definition provided by section 71(b)(1). For the above reasons, we hold that the Superior Court's reservation of jurisdiction for purposes of modifying or terminating Smolens' spousal support obligation did not violate the minimum term rule provided in section 71(f)(1). To reflect the foregoing, Decision will be entered for for respondent *684 .